## MIDDLESEX BANKING CO. v. SMITH.

### (Circuit Court of Appeals, Fifth Circuit. June 21, 1897.)

#### No. 593.

1. LIMITATION OF ACTIONS—AMENDMENT TO PETITION—NEW CAUSE OF ACTION.

Where an action is begun before expiration of the period of limitation, an amendment of the petition, after the expiration of such period, whereby the plaintiff, instead of suing for his own benefit, alleges that he sues by the authority and for the use and benefit of a third party, does not change the cause of action so as to subject the suit to the bar of the statute.

2. CROSS-EXAMINATION—REPETITION OF QUESTIONS—DISCRETION OF COURT.

The refusal of the court to permit counsel on cross-examination to repeat a question which has already been asked and answered three or four times is not erroneous.

3. APPEAL AND ERROR—DECISION ON MOTION FOR NEW TRIAL.

The refusal of a federal court to grant a new trial is not assignable as error.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This was an action at law by H. H. Smith against the Middlesex Banking Company, a corporation, and H. A. Kahler, to recover a sum of money alleged to have been wrongfully retained by defendant. The plaintiff's petition alleged, in substance, the following facts: One Frank Field, being the owner of a certain lot in the city of Dallas, Tex., on the 11th of July, 1890, executed a deed of trust thereon to secure the Middlesex Banking Company in the payment of two notes aggregating about $20,000, which were due in 1895. On the 3d of February, 1891, the said Field procured a policy of insurance from the Scottish Union National Insurance Company in the sum of $2,000 upon the house situated on the mortgaged lot and the fixtures and personal property therein. On the 12th of September, 1891, Field conveyed the lot and improvements to the plaintiff, Smith, subject to the incumbrances thereon, Smith not assuming the payment of such incumbrances; and on the same day the policy of insurance aforesaid was transferred to Smith, the loss, however, remaining payable to said H. A. Kahler, trustee. On December 10, 1891, the insured property was destroyed by fire, there being two other policies thereon, for $1,000 each, also payable to Kahler, as trustee. The petition then alleged that said Middlesex Banking Company and Kahler, on December 17, 1891, agreed with plaintiff that the money that might be collected on all the insurance policies should be used for the purpose of erecting a brick building upon the lot, "provided, that the building should be of such a character and value that the same will carry $4,000 of insurance." It was further alleged that the Scottish Union National Insurance Company refused to pay its policy, and that on December 17, 1891, it was agreed between plaintiff and defendants that plaintiff should proceed at once to erect the building, and that, when the insurance was collected, it should be turned over to him; that plaintiff did erect a building in accordance with this contract, which cost $5,000 when completed, May 1, 1892, and procured insurance thereon in the sum of $4,000, the policies being payable to said Kahler as trustee. It was further alleged that a suit was brought against the Scottish Union National Insurance Company in the name of plaintiff and defendants, wherein a judgment was recovered, and that in June, 1893, the sum of $2,-103.70 was collected thereon by defendants. Plaintiff alleged that he had demanded this sum from defendants, but that they had refused payment, and had converted it to their own use.

The suit was originally instituted in a state court, but was removed into the court below by the Middlesex Banking Company, it being shown that defendant H. A. Kahler, though a resident of Texas, was a mere naked trustee, having no personal interest or liability, and that the said banking company was incorporated under the laws of Connecticut. On February 4, 1896, plaintiff filed his first amended original petition, repeating the allegations hereinbefore set

forth, except as to that portion in which was set out the character of the house plaintiff agreed to build upon the lot. On this point the amended petition was as follows: "That the money that might be collected on said three policies of insurance should be used for the purpose of erecting improvements on said lot, including a brick building, provided the improvements to be completed should be insured in the sum of $4,000, with the loss payable to said Kahler, trustee, to secure said note." On February 6, 1896, plaintiff filed his second amended original petition, in which the allegations were the same as before, except that, instead of suing for himself, plaintiff alleged as follows: "Your petitioner, H. H. Smith, sues herein by authority and direction and for the use and benefit of the North Texas National Bank of Dallas, a private corporation organized under the national banking laws of the United States," etc.

In its answer, defendant, among other defenses, set up that the change of capacity in which the plaintiff sued, as shown by the amendment of the second amended original petition, was the beginning of a new suit, and that more than two years had elapsed since the accrual of the cause of action in favor of the said North Texas National Bank, and that the action was, therefore, barred by the statute of limitation of two years. A trial was had at the January term, 1897, which resulted in a verdict for the plaintiff, and the court entered judgment accordingly. Thereafter a motion for new trial was made and denied, and defendant then sued out this writ of error. The first assignment of error was to the refusal of the court to give a requested instruction to the effect that the cause of action was barred by limitation, and that a verdict should be returned for defendant.

The second assignment of error was as follows: "The court erred in giving in charge to the jury the following special instructions at the request of plaintiff: 'Plaintiff requests the following charges, which I give: "The jury are instructed that the evidence shows that the proceeds of the insurance policy in question in this case were paid to H. A. Kahler by his attorneys on February 1, 1893. The evidence further shows that the North Texas National Bank consented at the time that the money should be so paid to and received by Mr. Kahler, but the jury are also instructed that this does not show that the bank waived its right to be paid the money by Mr. Kahler. The policy of insurance was payable to Mr. Kahler, trustee. It was his right and duty to receive the money in any event, no matter to whom the money really belonged, and it then became Mr. Kahler's duty to pay the money to the rightful owner; and, if the money belonged to plaintiff, it was his duty to pay it to plaintiff, notwithstanding the fact that the plaintiff or the bank may have consented that the money be paid to Mr. Kahler by the attorneys who collected it; and the mere fact that such consent may have been given will not of itself defeat the plaintiff's right to recover it if, under the testimony, plaintiff would otherwise be entitled to recover." ' And in this connection the court also erred in making the following statement to the jury as a part of his general charge, to wit: 'Gentlemen of the Jury: It seems to the court, and I have no hesitation in saying to you, that Mr. Dabney and his partner had no alternative than to pay the money to Mr. Kahler; and, if Mr. Kahler had gotten ugly about it, he could have compelled them to turn it over to him right quick. They were his counsel. This was an insurance policy held by him for his company, and the counsel, when they got the money, they had no right to hold it. It was their client's money. The North Texas National Bank had no right to object to the first disposition of the fund. But you will distinguish in this case the difference between the North Texas National Bank agreeing or permitting Mr. Dabney and Edmonson to give over the money to their client in the first instance, and of the other question of making an agreement or contract by which they proposed to relinquish all claims thereto. That is a different question. That is for the jury to say. I don't dispose of the question, but merely call your attention to the difference of the two questions,'—which action of the court in giving said charges was at the time excepted to by defendant, as shown by bill of exceptions No. 2."

The third assignment of error was in the following language: "The court erred upon the trial of this case by interfering with defendant's counsel in their cross-examination of H. H. Smith, plaintiff in the case, in this, to wit: 'The said Smith, being upon the witness stand, testified in his own behalf,—testified that he had made a contract with H. A. Kahler, manager of the Middlesex·

Banking Company, as alleged in plaintiff's petition; that is, he stated it was agreed that the money that might be collected on the insurance policies should be used for the purpose of erecting improvements upon the lot in controversy, including a brick building, provided the improvements to be completed should be insured in the sum of $4,000.' And upon cross-examination, said witness, being asked the question if he did not, on the former trial of this case, testify that the contract was that the improvements to be made on said lot should be of such a character and value that the same would carry $4,000 insurance, to which question he answered that he did not know what his exact language was as to this point on the former trial of the case, but that he considered it amounted to the same thing, thereupon defendants' counsel asked witness to state as nearly as he could the exact language of the contract, but the witness answered the question substantially in the same way, saying he did not remember the language used by him on a former trial, but that he considered that to say the building to be insured for $4,000, and to say that the building should be of such a character and value as would carry $4,000, was substantially the same thing. After this question had been repeated to the witness three or four times, and answered substantially in the same way by him, the court stopped defendants' counsel, and put an end to the cross-examination of said witness upon that point, and at the same time stated in the presence and hearing of the jury that he would not permit a repetition of the question, as counsel would have an opportunity to argue the difference between the two forms of expression to the jury, but stated that the court agreed with the witness that it amounted to the same thing whether the language used was that the house would be insured for $4,000, or that it would be a house of such a character and value as to carry $4,000 insurance; and the court afterwards erred in stating, among other things, in his general charge to the jury as follows: 'Gentlemen of the jury: About this language used by Mr. Smith, on one occasion or another, that it must be a building that would insure for $4,000, or would carry $4,000, the court apprehends that you will understand that was all the same language. It would be puerile for the contract to mean that the building might be insured for $4,000 for five minutes or a day, through friendship or fraud, and thereby comply with the meaning of the contract; and, if you find that a contract existed, you will find that it was a contract for a building that would not only insure for $4,000, but that would carry the insurance at the time, under the rules of the insurance companies under ordinary circumstances. As Mr. Smith testified, according to his understanding, it was all the same thing. It is true that the pettifogger might contend that it was insured for $4,000 for one day; therefore they had complied with the contract. There has been no such contention. There can be none by any reasonable man.' Defendant's evidence tended to show that no such contract was made on the trial of this case. Harry A. Kahler and H. H. Smith were the only witnesses who testified to the language of the conversation between Smith and Kahler in which the contract sued on was alleged to have been made."

The fourth assignment of error was that the court erred in overruling the motion for a new trial.

Hill, Dabney & Edmonson, for plaintiff in error.

William J. Moroney and Joseph M. Dickson, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

PER CURIAM. The second amended original petition filed by the plaintiff in the court below does not make new parties, nor introduce any new cause of action. Construed most unfavorably to the pleader, and as compared with the original petition, it can only be held to have more clearly defined and described the cause of action upon which the plaintiff originally sued, and continued to sue. It follows that the charge to the jury requested by the defendant in the court

below on the trial of the case with reference to the statute of limitation was properly refused.

From the statement of the evidence as contained in the bills of exception, we do not find any error in the special instruction given to the jury at the request of the plaintiff, or in that portion of the court's charge recited in the bill of exceptions. The refusal of the trial judge to permit counsel for defendant in the court below on cross-examination of the witness to repeat a question which had already been asked and answered three or four times, is certainly not erroneous, but rather has the appearance of having been eminently proper and commendable.

We again announce that the refusal of the trial court to grant a new trial is not assignable as error. From a careful examination of the whole record in this case, we are not satisfied that there was any reversible error in the rulings of the trial judge on the trial. The judgment of the circuit court is affirmed.