## LOUISVILLE & N. R. CO. v. WHITE.

### (Circuit Court of Appeals, Fifth Circuit. February 28, 1900.)

### No. 858.

1. APPEAL—REVIEW—RULING EXCLUDING TESTIMONY.
   A witness for defendant was recalled at request of plaintiff, and asked if, at a time and place stated, he had not, in a conversation with a person named, made a certain statement. He admitted the conversation, but denied having made such statement, or any statement to that effect. Defendant on redirect examination asked him to state the conversation, and what he said, to which question the court sustained an objection on the ground of immateriality. Plaintiff afterwards introduced as a witness the other party to the conversation, who testified that the witness made the statement attributed to him. Defendant did not again recall the witness, or make any offer showing what his answer to the excluded question would have been. *Held*, that the ruling did not constitute reversible error.

2. SAME—HARMLESS ERROR.
   A ruling excluding the answer of a witness, even if erroneous, is without prejudice, where the witness in his previous testimony has stated substantially the same thing.

3. TRIAL—INSTRUCTIONS—SUFFICIENCY OF EVIDENCE.
   A charge that plaintiff is entitled to a verdict, if the jury are "reasonably satisfied from all the evidence that the allegations of the complaint are true," is not erroneous because it fails to state that the jury must be satisfied from a "fair preponderance" of the evidence.

4. APPEAL—REVIEW—EFFECT OF STATE STATUTES.
   The rule of the federal courts that a ruling on a motion for new trial is not reviewable on a writ of error is not affected by a state statute allowing appeals from such rulings.

5. SAME—HARMLESS ERROR.
   The admission of immaterial or irrelevant evidence is not a sufficient ground for reversing a judgment, where it appears not to have affected the verdict injuriously to the plaintiff in error.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

W. I. Grubb and W. A. Walker, for plaintiff in error.
Saml. D. Weakley and Edw. H. Cabiness, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. This is an action for damages for the death of plaintiff's intestate, who was an engineer in the employment of the defendant railroad company at the time of his death; and the action is brought under section 1749 of the Code of Alabama of 1896, generally called the "Employers' Liability Act." The intestate at the time of his death was the engineer of a passenger train, running from Birmingham to Blocton, Ala. While passing over an iron bridge spanning the Cahaba river, the train fell with the bridge into the river, and intestate was killed. There was a trial before the circuit court, and the jury found a verdict for the plaintiff for $12,500. After vainly attempting to secure a new trial, the defendant railroad company sued out this writ, assigning 31 errors on the face of the record.

Counsel for the plaintiff in error, in their brief, say, "The principal error to which we direct the court's attention is the thirteenth, though all those commented on are relied upon." The thirteenth assignment of error, which is singled out by counsel as the one mainly relied upon, is based on the action of the court in sustaining plaintiff's objections to the following question asked the witness W. G. Day on cross-examination, i. e.: "Now tell the jury what the conversation was you had, and what was said by you." This witness was examined by defendant, and testified that he had inspected the wrecked bridge a month before the accident, and had found the bridge, track, and ties in good condition, after making a close inspection; that he had seen trains passing over the bridge frequently, and had never seen anything to indicate that there was anything the matter with it. This witness was afterwards recalled by the plaintiff, with the permission of the court, for the purpose of laying a predicate for contradicting him, and the record shows the following:

"I was at the Union Depot on the 27th of December, 1896, the day the wreck occurred. I came from up the road. I remember of meeting R. H. Stokes there. I remember on that occasion that Mr. Stokes asked me if I had heard of the misfortune or bad luck of the defendant railroad company, and I said, 'No, I hadn't heard of it,' and he said that the bridge over the Cahaba river had gone down. I didn't say, in reply to Mr. Stokes' statement about the wreck, that it was nothing more than I expected; that I had had orders to go there the next day and fix it. I had no such conversation with Mr. Stokes. I didn't say to him at the same time, and on the same occasion, that the bridge was in a bad fix or in a bad condition, and that I had orders to go there the next day (Monday) and fix it."

On re-examination he testified as follows:

"I know R. H. Stokes. He lives in town somewhere. I think he is a car repairer at the Kansas City shops at present. I saw him at the depot on Sunday, the 27th of December, 1896. It was after the wreck occurred, but I don't know what time of day. I hadn't heard about the wreck. I had a conversation with Mr. Stokes. There was a crowd there, but I couldn't name anybody in the crowd but Mr. Stokes. I didn't know any of the others. The conversation was right under the shed in front of the waiting room, or about the entrance gate."

The defendant asked the witness the following question:

"Q. Now tell the jury what the conversation was you had, and what was said by you."

The counsel for plaintiff objected to the question as immaterial. The court sustained the objection, and the defendant excepted. The witness testified further as follows:

"I didn't make any such declaration to Mr. Stokes, or to anybody in the presence of Mr. Stokes, as those inquired about."

The record also shows that, after the defendant had rested his case, R. H. Stokes, called for the plaintiff, contradicted witness Day as to the conversation that took place in the depot at Birmingham on the day the bridge fell. The record does not show what the witness Day would have answered to the question propounded, otherwise than as appears in his statement already made. He had denied positively making any such declarations to Mr. Stokes, or to

anybody in the presence of Mr. Stokes, as those inquired about. It is true, he says he had a conversation with Mr. Stokes; but as to what it was about, and as to what he said, we are wholly in the dark. He did not ask to give an explanation. Whether the refusal to permit him to answer the question propounded was error to the prejudice of the defendant company depends to a large extent upon what his answer would have been. The defendant in error could have furnished this information by stating to the court what he expected to prove by the witness, and he could have further protected himself by recalling the witness Day after Stokes testified. At the time the rejected question was asked, it was not to be assumed that Stokes or any other witness would contradict him; and, if not contradicted, it was wholly immaterial what he really did say. Under these circumstances, we are clear that the refusal to permit the witness Day to answer the question propounded was not reversible error. See State v. Dill (S. C.) 26 S. E. 567; Bruner v. Nisbett, 31 Ill. App. 517.

The other assignments of error commented upon in the way of argument are the tenth, twenty-ninth, thirtieth, and thirty-first.

The tenth assignment is to the effect that the court erred in excluding the following evidence of F. A. Bishop, to wit: "But I would have seen them, if they were rotten, very likely." The record shows that Bishop, a witness for the defendant, testified that he was a locomotive engineer, and had frequently run over the bridge in question, and the purport of his evidence was to the effect that the bridge was in a safe condition. The bill of exceptions shows the following:

" 'I have gone over the bridge at the rate of ten miles an hour. When I was going slow, I could see the ties very nicely. In going fast, I wouldn't notice them so much. The ties were sound, as far as I knew. I never noticed any rotten ones. I don't know that I ever noticed closely.' Plaintiff moved to exclude the following answer of the witness: 'But I would have seen them if they were rotten, very likely,'—as being a conclusion of the witness. The court sustained the motion, and excluded the foregoing portion of the witness' answer, and the defendant excepted."

From this it appears that the witness had already testified that the ties were sound, as far as he knew; that he never noticed any rotten ones; that he had gone over the bridge plenty slow to have seen them, and he did not know if he had ever noticed closely. After allowing this evidence, to strike out, "But I would have seen them if they were rotten, very likely," was, to put it in the aspect most unfavorable to the defendant, error without injury. The cases cited in support of this assignment (Railroad Co. v. Carloss, 77 Ala. 443; Railroad Co. v. Linn [Ala.] 15 South. 508; Same v. Yarbrough, 83 Ala. 238, 3 South. 447) are not applicable to the precise case presented.

The twenty-ninth assignment of error is to the effect that the court erred in giving the jury, upon the written request of the plaintiff, the following charge:

"The 'preponderance of the evidence' does not mean that the plaintiff must produce a greater number of witnesses than the defendant. It is sufficient to

entitle her to a verdict that you are reasonably satisfied from all the evidence that the allegations of the complaint are true."

Counsel for plaintiff in error argues as follows:.

"The error of the charge is in its final clause, which should assert that if the jury are reasonably satisfied from a fair preponderance of the evidence. As it reads, the charge merely means that, after all the evidence is in, the jury should find for the plaintiff, if reasonably satisfied from a fair preponderance of the evidence. Behrman v. Newton (Ala.) 15 South. 838."

Exactly the difference in effect between the charge as given and as the plaintiff in error claims it should have been given is not apparent. In Behrman v. Newton, supra, we find the following:

"There was no error in giving charge No. 4. A jury cannot be reasonably satisfied of the existence of a disputed fact unless there is a preponderance of the evidence in its favor. In Acklen's Ex'r v. Hickman, 60 Ala. 568, it was held that the preponderance, unless it reasonably satisfied the mind of the jury, is not enough; and in the case of Vandeventer v. Ford, 60 Ala. 610, the rule was laid down that a charge should not be given which instructed the jury that they should base their verdict upon a mere preponderance of the evidence. In Rowe v. Baber, 93 Ala. 422, 8 South. 865, it is said that the true rule is that, to justify a verdict, the evidence must reasonably satisfy the minds of the jury that the facts exist upon which their verdict is based."

The charge No. 4 which was there approved reads as follows:

"The plaintiff must satisfy the jury by a preponderance of the evidence that the contract relied upon by them is the true contract, and unless this has been done the defendant is entitled to a judgment at their hands."

It seems that, while the court approved this, it also approved the charge in Rowe v. Baber, supra, i. e.: "The true rule is that, to justify a verdict, the evidence must reasonably satisfy the minds of the jury that the facts exist upon which their verdict is based,"—which is identical in meaning with the charge complained of, to wit: "It is sufficient to entitle her to a verdict that you are reasonably satisfied from all the evidence that the allegations of the complaint are true."

The thirtieth and thirty-first assignments of error are based on the action of the court below in overruling the defendant's motion for a new trial. It is claimed that section 434 of the Code of Alabama of 1896, which is as follows: "Appeals from Decisions on Motions for New Trials. Whenever a motion for a new trial shall be granted or refused by any circuit or city court in any civil case at law, either party may except to the decision of the court, and may reduce to writing the reasons offered for the new trial together with the substance of the evidence in the case and also the decision of the court on the motion, and it shall be the duty of the judge before whom the motion is made to allow and sign the same; and such bill of exceptions shall be a part of the record in the cause, and may embrace the judgment and motion or other matters of record; and the appellant may assign for error that the court below improperly granted or refused to grant a new trial; and the supreme court shall have power to grant new trials or to correct any errors of the circuit or city court in granting or refusing the same,"—is applicable to proceedings in the United States court sitting in Alabama. It is well settled that, "in regard to motions for a new trial

and bills of exception, the courts of the United States are independent of any statute or practice prevailing in the courts of the state in which the trial is had." Missouri Pac. Ry. Co. v. Chicago & A. R. Co., 132 U. S. 191, 10 Sup. Ct. 65, 33 L. Ed. 359; Fishburn v. Railway Co., 137 U. S. 60, 11 Sup. Ct. 8, 34 L. Ed. 585. And it is also well settled that in the United States courts the action of the trial judge in granting or refusing a motion for a new trial is not reversible on writ of error. Banking Co. v. Smith, 23 C. C. A. 485, 83 Fed. 133. The reason is apparent. So far as the motion for a new trial is based on matters within the discretion of the trial judge, his action ought not to be reviewed; and, so far as it is based on errors of law shown by the record, the party aggrieved can take advantage of them by direct assignment.

We have examined the other assignments of error far enough to see that in the main the rulings of the trial judge were correct, and when subject to criticism the rulings were on immaterial matters, and, if erroneous, it was error without prejudice. The admission of immaterial or irrelevant evidence is no sufficient reason for reversing a judgment, where it appears not to have affected the verdict injuriously to the plaintiff in error. See Mining Co. v. Taylor, 100 U. S. 42, 25 L. Ed. 541; Lancaster v. Collins, 115 U. S. 227, 6 Sup. Ct. 33, 29 L. Ed. 373.

In overruling the motion for a new trial the trial judge said:

"As to the question of damages: I was when the verdict was announced, and still am, of the opinion that the damages are somewhat excessive; but the plaintiff being entitled to recover, according to the verdict found by the jury, I do not find the damages so greatly excessive, under the rules declared by the supreme court of Alabama to be considered in fixing the damages in such cases, as to lead me to believe that there was any prejudice on the part of the jury against the defendant, or any improper or undue influences operating on them. Hence I do not feel authorized to set aside the verdict on this ground."

In view of this opinion of the trial judge, and considering the large amount awarded as damages, we do not think that we are called upon to enhance the amount by allowing the defendant in error damages for the suing out of this writ of error. The judgment of the circuit court is not tainted with reversible error, and must be affirmed.