## STATE v. DILL.

1. EVIDENCE—CROSS-EXAMINATION—REPUTATION.—A witness, who has testified that the reputation of a defendant is good, may be asked on cross-examination if he is not known to habitually violate the dispensary law.

2. IBID.—IBID.—CONTRADICTION.—Where the ground for contradiction is laid on cross-examination, no testimony is admissible in rebuttal until contradiction is made or attempted.

3. IBID.—INDICTMENT—REPUTATION FOR VIOLENCE.—An indictment against a deceased for murder (case not tried) is incompetent to show the character of the deceased for violence in prosecution against his slayer for murder.

4. MARSHAL—SHERIFF.—A U. S. marshal has the same powers in a State as are conferred on the sheriffs and their deputies by the laws of such State.

5. CHARGE.—The portion of the charge excepted to held not to be in violation of the Constitution.

6. IBID.—APPEAL—SUPREME COURT.—Where a Judge, in his charge, says to counsel, "I believe that is your first request," and he remains silent, he cannot afterwards be allowed to complain here on this point.

7. CHARGE.—The portion of the charge excepted to held not to be in violation of the Constitution.

Before WITHERSPOON, J., Spartanburg, June, 1896. Affirmed.

Indictment against John Dill for the murder of John D. Kirby. The defendant was convicted of manslaughter, and appeals on the following grounds:

1st. Because the presiding Judge erred in allowing the solicitor to ask the witness, John Dill, the following question, and permitting the answer to the same, to wit: "Q. Isn't his reputation there in that community that of a man who is violating the laws of his country, distilling liquor—isn't that his reputation? A. Well, I suppose so." The same being irrelevant and incompetent, the defendant having only put in evidence his character for peace and good order.

2d. Because the Circuit Judge erred in allowing the solicitor to ask the witness, J. B. Dill, the following questions, and in allowing the answers thereto, to wit: "Q. You have heard that, haven't you? A Well, I don't know it to be so. Q. I am not asking what you know of your own knowledge, but what is the general talk? A. All I can tell about that is just this, I know that to be so, men come past my house inquiring the way there. Q. Isn't that the character, the reputation of John Dill in that community? A. It is, I think, sir." The same being irrelevant and incompetent, not in reply to any testimony brought out by the defendant, and greatly to his prejudice and injury.

3d. Because the presiding Judge erred in not confining the solicitor in his cross-examination of defendant's witnesses on the question of character to the question as to the reputation of the defendant for peace and good order, neither the general reputation of the defendant nor his reputation as a liquor dealer having been put in issue.

4th. Because the Circuit Judge erred in refusing to allow the witness, R. B. Babb, to answer the following question, propounded by the defendant's counsel: "Q. State exactly what you said to Mr. Bearden?" The same being directly in reply to a question previously asked said witness by the

solicitor, and in explanation of a conversation alleged to have occurred between said witness and the State's witness, C. C. Bearden, in which it is alleged that the said Babb made statements to Bearden about the homicide inconsistent with his testimony on the stand.

5th. Because the Circuit Judge erred in refusing to allow the defendant's attorney to introduce in evidence the record in the case of The State *v.* John D. Kirby (with whose killing the defendant is here charged), charged with the murder of one Hammett; the same being competent and pertinent evidence tending to show the violent and turbulent disposition of the deceased.

6th. Because the Circuit Judge erred in refusing to allow the defendant's witness, Charles Watson, to answer the following questions propounded by the defendant's counsel: "Q. You say you have been arrested by Mr. Kirby; I want to know if while you were arrested he inflicted upon you any cruelty, and if so, what it was? Q. If he has inflicted upon you any acts of cruelty or violence while you were in his custody as a prisoner, state it?" It is submitted that said testimony is competent to show the violent and inhuman treatment of the deceased to his prisoners; to show special acts of violence, and tending to show his violent and turbulent character.

7th. Because the Circuit Judge erred in refusing to allow the witness for the defendant, George H. Camp, to answer the following question propounded to him by the defendant's counsel. "Mr. Mooney: I can prove special instances of violence, and I desire to ask this witness—possibly it would be more regular to introduce the records—if he has heard of his (meaning Kirby) killing another man; do you know that fact?" The knowledge of that fact having been brought home to the defendant, and the reputation of the deceased having been put in issue, it is submitted that said testimony is competent and relevant to show special acts of violence and his violent and dangerous character.

8th. Because the presiding Judge erred in refusing to

allow the defendant to offer evidence of special acts of vio-
lence committed by the deceased.

9th. Because the presiding Judge erred in not holding
that the alleged arrest of the defendant by Kirby, the de-
ceased, was unlawful, for the reason that the said Kirby
had no warrant for the arrest of the said John Dill.

10th. Because the presiding Judge erred in not reading
the whole of defendant's first request to charge, and in
charging as follows: "I have been requested to charge you,
in the first place, that if the defendant, John Dill, was in the
possession of that whiskey at the time he was arrested—'I
think that is your first request' (to Mr. Mooney)—and then
stating to the jury: 'I so charge you, because they are pro-
ceeding under this dispensary law, and the dispensary law
contemplates that a man must have this contraband whiskey
in possession at the time it is seized from him, and he by
having it subjects himself to arrest without warrant. Said
request to charge being as follows: 'First. The jury is in-
structed that in order to justify the arrest of John Dill by
the deceased and the other officers for having in possession
contraband liquor, the liquor must have been found in his
possession.'" It is submitted that said charge was calcu-
lated to mislead and confuse the jury, and is absolutely
foreign to the issues involved in this case.

11th. Because the Circuit Judge erred in charging the
jury as follows: "Now, Mr. Foreman, the law says you can
arrest without a warrant a man found in possession of this
contraband whiskey—take the whiskey and arrest the man.
The act so provides, provided a warrant is issued in a rea-
sonable time thereafter. If you conclude that this was the
act of John D. Kirby, that he was a deputy United States
marshal who made the arrest, then it was his duty, if he
made the arrest without a warrant, as soon as he could rea-
sonably get an officer, to have a warrant issued against the
party charged. That would have been his duty; but if you
conclude that before he had time to do that he lost his life,
and that he was an officer acting within the terms of the

law, then the law never requires an impossibility; and, therefore, I charge you that if John D. Kirby was the man who acted in this case in making the arrest and seizure as a deputy United States marshal, it was his duty, if he arrested him and took possession of the whiskey without a warrant, it was his duty under the provisions of the dispensary act to get out a warrant within a reasonable time thereafter. If he did not live for that reasonable time, then the defendant cannot say that his act was unlawful." Said charge, it is submitted, being erroneous, for the reason, among other things, that there is no claim that Kirby arrested Dill for violation of the dispensary law, but for a violation of the United States internal revenue laws; and that it was misleading and erroneous, and his Honor should have charged that the dispensary law had no application to this case.

12th. Because the verdict was contrary to the manifest weight of the evidence.

13th. Because the presiding Judge erred in charging the jury as follows: "Well now, Mr. Foreman, who was John D. Kirby? Did he occupy any position at the time he was killed—if so, what position? Was he or not a deputy United States marshal? Did he arrest this defendant, John Dill? If so, where did he arrest him? Under what circumstances did he arrest him?" The same being "in respect to matters of fact," and in violation of article 5, section 26, of the Constitution of South Carolina.

14th. Because the presiding Judge erred in charging the jury as follows: "Now, Mr. Foreman, I don't know that it is necessary for me to detain you any further, except I will just say this: that in applying the law as to self-defense, if you conclude that John Dill shot Kirby, under what circumstances did he shoot him? Where did he get the gun? Did he pick it off the ground? For what purpose did he pick it up from the ground? Did he pick it up merely to look at it, or to use it? Those are all questions for you; those are all matters of fact, from which you are to infer

and come to a conclusion as to what prompted him in pick-
ing up the gun off the ground, if you conclude he did so,
and what prompted him in firing that gun. Was Kirby's
conduct at that time such as to indicate to him that he was
committing an assault upon him—that he was about to en-
danger his life—put his life in imminent peril, or put his
person in peril of serious bodily harm? If so, and he didn't
provoke it—didn't bring it about—then he had a right to
strike, in the exercise of self-defense, even to the extent of
killing him; but, Mr. Foreman, did he pick up that gun
and present it towards Kirby? Then Kirby had the right
to use his pistol or gun in defense of his person. That is
the right that any one else would have had under the same
circumstances; or if his attitude at the time, with the gun,
was such as to lead Kirby to the honest conclusion that he
intended to shoot him, and that he was being placed in
imminent peril of his life; and you believe from the circum-
stances that the circumstances were such as would have
justified that conviction upon the mind of a man of ordi-
nary reason and firmness; and under those circumstances
Kirby had shot, and had not provoked the difficulty, and
was on trial for his life, then he could avail himself of the
plea of self-defense." The same being "in respect to matter
of fact," and in violation of article 5, section 26, of the Con-
stitution of South Carolina.

*Mr. J. A. Mooney*, for appellant, cites: *Repudiation:* 12
Rich. L., 443; 29 S. C., 34. *Unlawful arrests:* 2 Strob.,
73; 9 S. C., 316; 8 Tex., 545.

*Solicitor Schumpert*, contra, printed no argument.

Feb. 6, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. The defendant was tried at the
July term of the Court of General Sessions for Spartan-
burg County, in this State, before Judge Witherspoon and
a jury, for the murder of one John D. Kirby. The verdict
was guilty of manslaughter, and after judgment the defend-

ant appealed therefrom. The grounds of appeal will be set out in the report of the case.

The first three of the grounds of appeal may be considered together, and embrace the same question, namely: Is it competent in the cross-examination of a witness, who has testified in his direct testimony that a defendant on trial for murder is a peaceable citizen and in good order as such, to ask such witness if the defendant is not known to habitually manufacture and sell whiskey in open violation of the law? The object of the defendant in putting in evidence his general character for peace and good order, is to give some evidence of the absence of an evil intention on his part, and thus to negative a malicious intent. It is certainly a character highly to be commended, when witnesses testify that a citizen lives in peace and good order. An open defiance of the laws of one's country, by manufacturing and selling whiskey, does not entitle one to be considered as living orderly. The testimony on cross-examination, objected to, seems to us not only relevant but competent as well. These exceptions are overruled.

The fourth exception complains of the conduct of the Circuit Judge in denying to the defendant the right to have his own witness, R. B. Babb, testify, in reply, as to what he had told one C. C. Bearden. It seems that for the purpose of contradicting the testimony of R. B. Babb, who was a witness for the defendant, the solicitor asked Babb if he had not made a certain statement to C. C. Bearden at a given time and place, which Babb denied flatly. Then it was that, in his reply, the defense asked him what he had stated to Bearden, and to the answer of this question the solicitor objected. The Court ruled that the solicitor had only laid the foundation to his right to impeach Babb's testimony, which right he might or might not, in his discretion, employ. Hence, until this was actually done, the defense had no right to have this witness testify as proposed. We see no error here; for clearly until the actual effort to contradict this witness was made, no

such testimony was relevant or competent. This ground of exception is overruled.

Exceptions 5, 6, 7, and 8 are considered by the appellant as raising the single question as to the right of the defendant to offer in evidence a bill of indictment against the deceased, John D. Kirby, for the murder of one Hammett. The defendant and his witnesses had been allowed to state as a fact that John D. Kirby had killed Hammett, in order to show that the defendant knew Kirby was of a violent, dangerous character, and, besides, that Kirby had the character, while alive, of being a dangerous man. The defense, not content with this latitude, insisted that this indictment should also be introduced. What would have been the practical effect of such a ruling if it had been made by the Circuit Judge? There would have been thrust upon the attention of this jury, charged as they were with the trial of Dill for the murder of Kirby, an indictment of Kirby for the murder of Hammett. Under such circumstances the solicitor might have demanded the privilege or right to show by evidence that Kirby was not guilty of the murder of Hammett. Such a contingency has but to be stated to show how untenable is the contention of the defense in the case at bar. The Circuit Judge committed no error in this matter. The cases of *State* v. *Smith*, 12 Rich., 430, and *State* v. *Turner*, 29 S. C., 34, do not sustain any such contention.

The ninth exception complains of error, in the Judge on Circuit, in not holding that the arrest by Kirby, the deceased, of Dill, the defendant, on the 6th of March, 1896, was unlawful. The only evidence in the record of what position Kirby held is found in the Judge's charge, when he speaks of the testimony as referring to Kirby as having acted as deputy marshal of the United States in this State. We cannot say that the Judge was in error here. The section of the U. S. Revised Statutes—section 788—provides: "The marshals and their deputies shall have, in each State, the same powers in executing the laws of the United States as the sheriffs and their deputies

may have by law in executing the laws thereof." It is very clear that what is known as the dispensary law of this State amply provides that sheriffs and their deputies may seize contraband liquor, and arrest persons guilty of manufacturing or selling alcoholic liquors without a warrant, provided a warrant shall be procured within a reasonable time thereafter. Secs. 23, 33, 34, 42 of "An act to provide for the election of the State board of control, and to further regulate the sale * * of intoxicating and alcoholic liquors and liquids * * *" 22 Stat. at Large of this State, pp. 123–149. The presiding Judge does not decide, in his charge, that Kirby was acting as deputy marshal of the United States; he very properly leaves that as a fact to be determined by the jury. The Circuit Judge does declare that if Kirby was acting as such deputy marshal, he would have the same power to arrest without a warrant as a State sheriff and his deputies, and in this we see no error. The appellant seems to include in this ground of appeal a criticism of the presiding Judge for, in contravention of section 26 of article 5 of our State Constitution, charging the jury upon the facts, but our examination of the charge fails to show us that he so charged upon the facts. This exception is overruled.

The next—the tenth exception—cannot be sustained. The appellant complains that the Circuit Judge did not read the whole of his first request when he allowed the same; yet in the record itself it appears that the Circuit Judge, in his earnest desire to do full justice, appealed to Mr. Mooney, as appellant's attorney, in these words: "I think that is your first request." Now if Mr. Mooney, as the record shows he did, remained silent and did not then complain, he cannot now be heard to complain. This Court will relieve counsel when they have sought and failed to have had justice meted out to them, but when they silently acquiesce in the Court below, when the Circuit Judge seeks to ascertain if he has complied with their wishes, they ought not to be heard when they complain.

As to the eleventh ground of appeal, the quotation from

17—48

the charge of the Circuit Judge by the appellant is its own refutation.

As to the twelfth, it seems that the appellant has abandoned it in his argument, for he does not press it here.   *It is too general to be noticed.*

As to the thirteenth and fourteenth exceptions.   The appellant urges that the presiding Judge charged the jury upon the facts, in contravention of section 26 of article 5 of the Constitution of South Carolina.   We do not so regard the Judge's language, and these exceptions are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.