## STATE v. THRAILKILL.

1. EVIDENCE.—IN HOMICIDE case, defense being self-defense, State may prove all the facts preceding and leading up to the fatal encounter.
2. IBID.—EXCLAMATION.—Admission of exclamation of a bystander, "Run, A. is coming with his gun, and will shoot you," accompanied by direct evidence that defendant actually raised his gun as if to shoot, if erroneous is harmless.
3. IBID.—GENERAL REPUTATION of deceased for violence may be shown, but not particular acts of violence.
4. IBID.—In homicide case, where defense is self-defense, it is competent to show that a third person before fatal encounter had informed deceased through his wife that defendant had killed his brother.
5. CHARGE.—A Judge does not violate the constitutional inhibition against charging on the facts by giving his reasons for rejecting or admitting evidence to which objection has been made.
6. EVIDENCE—THREATS.—That deceased said a few days before he was killed that he had taken a pistol from one of defendant's servants, that defendant had repeatedly sent for it, but that he did not intend he should have it, properly excluded as not a threat and not necessarily showing ill-will.

7. CHARGE.—Remark by Judge during progress of case, "It seems to me we are losing sight of the issue. We are trying the question whether the defendant maliciously killed the deceased. We are now shifted around, trying the dead man," is not an expression of opinion on the facts or the merits of the case, not having been made in charging the jury.

8. MURDER.—CHARGE as to malice and murder in cases of deliberate killing sustained.

9. REPLY.—EVIDENCE of son's buying cartridges is competent in reply in trial of father for murder, where pistol fired immediately after fatal shot, and the son denied buying cartridges, and where he was with his father acting in sympathy with him during the fatal encounter.

10. CHARGE.—It is not error to refuse a request singling out the defendant and emphasizing the right of the jury to accept his statement in preference to that of other witnesses.

11. SELF-DEFENSE—BURDEN OF PROOF.—The absence of any other probable means of escape must be shown by defendant by preponderance of evidence as any other essential in the plea of self-defense.

12. CHARGE—STREETS.—In homicide case, where there is no question of right of participants to the use of the streets, it is not error for Judge to say that a request as to the right of the public to use the streets has no application to the case.

Before WATTS, J., Saluda, August, 1904. Affirmed.

Indictment against Morgan Thrailkill for murder. From sentence, defendant appeals.

*Messrs. J. N. O. Gregory, Able & Blease, C. J. Ramage* and *E. F. Strother,* for appellant, and *Messrs. D. S. Henderson* and *Johnstone & Cromer,* of counsel. The former cite: *State must prove every element of case beyond reasonable doubt:* 11 Cyc., 379, 381; 30 S. C., 132; 40 S. C., 349; 11 L. R. A., 602. *Not necessary for defendant to show there was no other means of escape:* 59 S. C., 305; 40 S. C., 349; note to Crim. Code, 262.

*Mr. Henderson* cites: *If evidence be admitted on promise to show its relevancy later, and it is not shown, it should be ruled out:* 1 Green. Ev., secs. 52, 52a. *Evidence as to trans-*

*actions and statements of others than participants or in their presence, is incompetent:* Whar. Crim. Ev., 2 ed., secs. 29, 30, 267; 13 S. C., 453; 47 S. C., 90; 56 S. C., 360; 78 Va., 287. *Statement not amounting to a threat is incompetent:* 43 S. C., 210, 52.

*Messrs. Johnstone & Cromer* cite: Judge must not charge *on facts or intimate directly or indirectly his impression of the evidence:* 49 S. C., 550; 36 S. C., 544; 11 Ency. P. & P., 114, 116.

*Solicitor George Bell Timmerman* and *J. Wm. Thurmond,* contra. The solicitor cites: *Objection not stating grounds and substance of objected evidence covered by other competent evidence will not be considered:* 42 S. C., 465, 474; 52 S. C., 1. *Holstein's evidence was admissible in contradiction:* 26 S. C., 117. *Defendant must show by preponderance of evidence that he had no reasonably safe means of escape: State* v. *Hutto.*

*Mr. Thurmond* cites: *The constitutional inhibition as to charging on the facts does not relate to rulings or reasons therefor:* 49 S. C., 413; 33 S. C., 100; 61 S. C., 17. *Hypothetical statement of facts may be given by Judge:* 68 S. C., 311; 54 S. C., 240. *If there was previous malice, provocation at time of killing will not excuse slayer:* 43 S. C., 206; 2 Rich., 182. *Evidence of former difficulty between defendant and another was admitted to show condition of defendant's mind:* 35 S. C., 342; 29 S. C., 209; 62 L. R. A., 198.

March 15, 1905. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendant, Morgan W. Thrailkill, shot and killed Benjamin Burton on 27th day of April, 1904, at the town of Monetta, in Saluda County. On his trial he set up the plea of self-defense. He was convicted of murder with a recommendation to mercy and was

sentenced to life imprisonment. The following brief state-ment of facts indicating the main issues made at the trial will be sufficient for an understanding of the questions involved in the appeal. On the morning of April 27, 1904, the de-fendant and his son, Clarence Thrailkill, drove to the store of Lackey Burton, the brother of Benjamin Burton who was killed, having a loaded gun in the buggy, and defendant de-manded of Lackey Burton the return of a pistol claimed by him, which it seems had been pawned with Lackey Burton by a negro. Lackey Burton testified that without aggression on his part the defendant undertook to shoot him from the buggy with the shot-gun, that he seized the gun to protect himself, and while so engaged Clarence Thrailkill shot him with a pistol. The Thrailkills both swore that Lackey Burton refused to give up the pawned pistol and undertook to take the gun from the buggy by force, without any act of aggres-sion on their part; and Clarence Thrailkill testified he shot in defense of his father, because he saw Lackey Burton trying to draw a pistol while struggling for the possession of the gun. The shot frightened the mule hitched to the buggy, and while the Thrailkills were getting him under control, Lackey Burton started to run across the railroad to the store of Steven & Catoe, seventy-five to one hundred yards dis-tant. The defendant, Morgan Thrailkill, had, in the mean-while, gotten out of the buggy and rapidly followed Lackey Burton with his gun, in order, as he said, that he would be close enough to shoot if Lackey Burton tried to shoot him. Lackey Burton and all the eye-witnesses, except the Thrail-kills, testify that the defendant while pursuing raised his gun at least once as if to shoot, but another person was in line with Lackey Burton who might have been hit if he had fired. The Court allowed witnesses for the State to testify that one of the bystanders, Bud Gantt, at this juncture "hol-lered" to Lackey Burton, "Run, Morgan is coming with his gun and will shoot you." The evidence for the State was to the effect that Morgan Thrailkill was prevented from enter-

ing the store by Steven, one of the proprietors. This ended Lackey Burton's connection with the matter.

Boyce Gantt, a witness for the State, was allowed to testify that he went to the home of Benjamin Burton, about three hundred yards distant, to carry a message "about Lackey being shot." The message was given to Mrs. Burton, who communicated it to her husband. Benjamin Burton then armed himself with a gun and pistol, and went to the scene of the trouble. Upon Benjamin Burton's approach, he was shot and killed by the defendant, without a word being exchanged, from ten to twenty minutes after the shooting of Lackey Burton. The witnesses for the State testified that Benjamin Burton had his gun under his arm in no position to shoot, and that he not only made no effort to do so, but did not appear to see defendant when he was killed. Defendant and his son Clarence testified the deceased was in the act of raising his gun to shoot when the defendant fired.

The defendant first insists that all evidence as to the difficulty between the defendant and Lackey Burton should have been excluded, because it occurred before the deceased, Benjamin Burton, arrived on the scene. It will be observed that the main issue was whether the defendant killed in self-defense. Upon this point the evidence for the State and for the defense was directly opposed. All that had preceded and led up to the fatal encounter was, therefore, highly enlightening to the jury, as indicating the state of mind and the motives and purposes which would probably be operating on the parties at the time. Nowhere have we found the true rule better stated than in *State* v. *Smith,* 12 Rich., 430, 442, where Judge Johnstone says: "The circumstances must determine the intention and the case. I do not mean the mere circle of facts immediately surrounding the parties at the moment of the fatal act; but the facts, more or less remote, according to the case, which may reasonably be supposed to have been in the minds or

contemplation of the parties at that time; the facts to which their conduct may be supposed to have tacitly referred; the facts which may be reasonably intended to have prompted the fatal act.   When the jury, who are to decide on the intent, have these facts before them, and not till then, they have the means of intelligent and conscientious judgment." See, also, *State* v. *McDaniel,* 68 S. C., 304.   The same principle applies to the acts and statements of Clarence Thrailkill in the presence of his father, the defendant.   The first, third and sixth exceptions are, therefore, overruled.

The defendant's next position is that the warning given by Bud Gantt to Lackey Burton while he was retreating from defendant, "Run, Morgan is coming with his gun and will shoot you," should have been excluded because it conveyed to the jury the opinion of an outsider.   The distance from his own store, where Lackey Burton was shot, to the store of Steven & Catoe is not over one hundred yards, and as Lackey Burton was going from his store to Steven & Catoe's store, and defendant was following at a rapid pace from almost the same point in the same direction, the distance from the witness, who was at the store they were approaching, could not have been as much as one hundred yards from the defendant.   It was, therefore, extremely probable that defendant heard the warning and had opportunity to disavow any intention to shoot.   But assuming that the warning was an expression of the witness as to the intention of the defendant not spoken in his presence or hearing, Bud Gantt and several other eye-witnesses were sworn and testified that defendant was pursuing Lackey Burton, and while doing so did actually raise his gun as if to shoot him. Hence the mere exclamatory warning of Bud Gantt, consequent upon seeing the gun raised as if to shoot, was made altogether immaterial and was swallowed up in his direct statement, and the statements of the other witnesses, in the presence of the jury, that he actually saw the defendant raise the gun as if to shoot.   The testimony as to the warning

was, therefore, of no consequence, and its admission, even if erroneous, was harmless. For these reasons the second and fifth exceptions are overruled.

The fourth exception charges error in the ruling that while the general reputation of the deceased for turbulence could be proved by the witness, Perry, particular acts of violence should be excluded. This ruling was clearly correct. *State* v. *Dill,* 48 S. C., 249, 26 S. E., 567. But in no event could the exception be sustained, because the defendant was allowed to bring out from the witness that he had had trouble with the deceased, who had drawn his pistol on him, and this was the only particular act of violence about which the effort was made to interrogate him.

Whether the deceased knew at the time he was killed of the shooting of his brother by Clarence Thrailkill, was a most important inquiry as to a substantive fact, because such knowledge would manifestly powerfully affect his feelings and influence his conduct. Hence proof that he was informed of the shooting of his brother tended to enlighten the jury as to his feelings towards the Thrailkills, and to interpret his action. Therefore, it was not only competent to prove that Boyce Gantt had informed him, through his wife, of the shooting of his brother, but, the issue being whether the defendant killed in self-defense, it was clearly favorable to him to prove that deceased had a motive to attack in revenge for the shooting of his brother. The statement of the Circuit Judge in admitting this testimony, that it was natural for deceased to go where his brother had been shot, was in no sense an expression of an opinion that deceased went on a peaceful mission. This remark, moreover, was not made in charging the jury. The Constitution provides: "Judges shall not charge juries in respect to matters of fact, but shall declare the law." Constitution 1895, art. V., sec. 26. Manifestly it is not a violation of this constitutional inhibition for the Circuit Judge to refer to the testimony already

adduced, when he deems it necessary to do so, in giving his reasons for rejecting or admitting the evidence to which objection is made. *State* v. *Marchbanks,* 61 S. C., 17, 39 S. E., 187. This disposes of the seventh and eighth exceptions.

In his ninth exception, the defendant insists the Circuit Court erred in striking out, or instructing the jury to disregard as having nothing to do with the case, the statement made by the witness Lott to the effect that on the day before he was killed, Benjamin Burton told him he had taken a pistol from a negro, one of defendant's hands, and that defendant had repeatedly sent for it, but he did not intend he should have it. The remarks made to Lott, it is quite clear, were not threats, and they did not necessarily show ill-will. On the contrary, they may very reasonably be understood to mean merely an intention to assert a right to the pistol. In *State* v. *Sullivan,* 43 S. C., 209, 21 S. E., 4, it was proved the deceased said of defendant, "he is not fit to live in a civilized country." Sustaining the Circuit Court in striking out these words, this Court said: "The expression did not amount to a threat nor did it necessarily show ill-feeling on the part of the deceased toward the prisoner." See, also, *State* v. *Wyse,* 33 S. C., 591.

In referring to the narrative of details of former acts of violence of the deceased towards others, the Circuit Judge remarked: "It seems to me we are losing sight of the issue. We are trying the question whether the defendant maliciously killed the deceased; we are now shifted around trying the dead man; but go on." The defendant was indulged beyond his legal rights in proving specific violent acts of the deceased. This remark was not an expression of opinion on the facts or the merits of the case, and was not made in charging the jury.

When the witness Milledge Holstein was on the stand in reply, he testified on cross-examination that defendant's

reputation for law and order was excellent. Upon redirect examination he was interrogated as to specific acts of violence of defendant toward Oxner, a school teacher. The defendant's counsel insisted that the witness should confine himself to matters within his own knowledge, but made no other objection to the testimony. After it appeared the witness knew nothing except that Oxner had whipped defendant's son, and that only from hearsay, the attorney for the prosecution asked him to tell what the defendant had said about the trouble with Oxner. Here the presiding Judge stopped the examination, saying: "I don't believe I will let it come out. The fact is before the jury, he went up there after him. I am not going to try that case now." While, as we have shown, the Circuit Judge violated no law in this remark, it is perhaps due to him to say that the defendant himself had testified that his mission at Monetta on the day he killed Burton was to see Oxner, and that he carried the gun to protect himself in case of need. In excluding what defendant had said to the witness, the Circuit Judge sustained the defendant's objection. No objection was made to the testimony of Oxner, and hence the exception as to its admission is not before the Court. The ninth, tenth, eleventh and fourteenth exceptions are overruled.

The twelfth exception, as amended, is as follows: "Because the presiding Judge erred in charging the jury as follows: 'Now, if the defendant made up his mind to take the life of the deceased, and if he made preparation for that purpose, if he prepared for the purpose of killing the deceased, and determined to kill him, and if in pursuance of that deliberation and preparation he did kill the deceased, then that would be malice in the eye of the law, and would be murder, unless he acted in self-defense,' the same being erroneous in that it was a charge upon the facts in the case and an expression of opinion on a material fact of the case." This was nothing more than an instruction, if the jury found the defendant deliberately

killed the deceased with malice aforethought, as charged in the indictment, he would be guilty of murder.    The exception must be overruled.

Clarence Thrailkill was with his father, the defendant, when Burton was killed, and his pistol fired immediately after the fatal shot from his father's gun.    He testified that this was an accident due to excitement.    On cross-examination, he denied buying cartridges that day. In reply, the State was allowed to prove that he did buy cartridges before the shooting.    As the testimony tended to show that Clarence and his father came together and acted in sympathy with each other throughout the difficulty, this testimony was competent.    The thirteenth excepion, therefore, cannot be sustained.

The Circuit Judge was requested to charge: "That where a prisoner is sworn in his own behalf, the jury may attach such importance to his testimony as their conclusion, honestly formed, may warrant; and they may accept his statement in his own behalf in preference to the sworn testimony of any or all other witnesses sworn in the case."    Without formally refusing the request, the Circuit Judge charged, in effect, that the defendant stood on precisely the same ground as any other witness.    Manifestly it was not error of law to decline to single out the defendant or any other witness and emphasize the right of the jury to accept his testimony in preference to that of other witnesses. For this reason the fifteenth exception is overruled.

The refusal of the following request is made the basis of the sixteenth exception: "In reference to the question as to whether there was a safe, reasonable means of escape for the prisoner at the time of the homicide, it is not a circumstance to be established negatively by the preponderance of the evidence by the defendant, but it must be shown positively by the State beyond a reasonable doubt, that there was such a safe, reasonable means of escape for the prisoner at the time of the homicide."    The absence

of other probable means of escape is an essential element of the plea of self-defense, and like its other elements must be established by the preponderance of the evidence. The well-settled rule in this State is that in order to make out the plea of self-defense it is necessary to show: "(1) that the accused believed it necessary to take his assailant's life in order to save his own life, or to avoid serious bodily harm; (2) that the circumstances were such as in the opinion of the jury warranted such a belief in a person of ordinary firmness and prudence when situated as the accused; (3) the accused must be without fault in bringing about the difficulty." *State* v. *Whittle,* 59 S. C., 297, 305, 37 S. E., 923. It is clear that the necessity required is not shown without proof that there was no probable means of escape.

As there was not the slightest question of the right of the deceased and the defendant to be where they were when the tragedy occurred, we agree with the Circuit Judge that the law as to the rights of the public to the use of the streets and roads was without application to the case; and his remark to that effect in charging defendant's request on the subject is approved. The seventeenth exception is, therefore, overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.