## STATE v. DEAN.

1. EVIDENCE—REFRESHING MEMORY.—A witness may refresh his memory by reading over his evidence taken down by another at a former trial.

2. IBID.—DECLARATIONS of defendant in homicide case to others before homicide as to what he was going to do is not admissible in his own behalf as indicating the purpose of his movements.

3. IBID.—REPUTATION of deceased for violence cannot be shown by proof of specific acts of violence with third persons with which defendant was not connected. *State* v. *Smith,* 12 Rich., 430, *distinguished from this.*

4. SELF-DEFENSE—CHARGE.—Modification of request to charge as to law of self-defense held to be merely explanatory.

5. IBID.—IBID.—Request as to law of self-defense properly refused because it did not include the principle that a defendant cannot set up the plea of self-defense unless he be without fault in bringing on the difficulty.

6. CHARGE.—When a charge is full and substantially includes the requests, refusal to charge them is not error.

7. MANSLAUGHTER—SELF-DEFENSE.—The charge as to manslaughter and self-defense was specific and clear, and included the principle that the defense of self-defense may be based on apparent necessity, and that a defendant may strike in sudden heat and passion with intent to kill and be only guilty of manslaughter.

Before GARY, J., Spartanburg, September, 1904. Affirmed.

Indictment against Harry Dean for murder. From sentence, defendant appeals on the following exceptions:

"1. That his Honor erred in permitting the witness, J. W. Smith, while testifying, to read his testimony given at the former trial, the Court holding that he had a right to do so for the purpose of refreshing his recollection as to the correctness of what he was testifying to in this trial. The error being, that the witness had no right to be allowed access to that testimony while on the stand, the State thereby improperly and illegally getting to the jury the testimony of their witness given at the former trial, which was more to its liking, and thereby also, in effect, contradicting their own witness, in violation of the rules of evidence.

"2. That his Honor erred in not permitting the witness, Lewis McMillan, to testify as to the declaration made to him by the defendant as he was leaving home that day upon

the trip which ended in the homicide. The error being, that such declaration was permissible as being explanatory of the defendant's conduct, made contemporaneously with his departure from home.

"3. That his Honor erred in excluding the following from the statement of what Mrs. McMillan would testify if present, to wit: 'that the defendant stated, upon leaving home about half an hour before the shooting of Miller Mc-Kinney, that he was going to Sam Nesbitt's to get some watermelons, and that then he was going to help his father on the farm.' The testimony being properly admissible as being the expression of the defendant, indicating the purpose of his movement about one-half hour before homicide, indicating a peaceable purpose.

"4. That his Honor erred in not permitting the witness, Martha Dean, to testify to acts of violence committed upon her by the deceased a few months before the homicide, notwithstanding the defendant knew of those acts of violence before and at the time of the homicide; his Honor holding that the rule is that only the general character for violence of the deceased can be proven, and not any specific acts of violence, even if the defendant knew of them. Such ruling is directly opposed to the decisions of courts of appeal in this State, beginning with the case of the *State* v. *Smith,* 12 Richardson.

"5. That his Honor erred in not allowing the defendant to testify as to the particulars of the difficulty which he had heard prior to the homicide had taken place between the deceased and Martha Dean; his Honor erroneously ruling that it was not competent to go into the particulars of any previous difficulty which the deceased had had with any one, even if such particulars were known to the defendant prior to the homicide, thereby overruling the decisions of the Court of Appeals and the Supreme Court of this State.

"6. That his Honor erred in making the same ruling in reference to the difficulty between the deceased and C. S. Jones, and in not permitting the defendant or said C. S.

Jones to testify in reference to it, notwithstanding the fact that said defendant was informed of the particulars of said difficulty prior to the homicide, and which difficulty was a recent occurrence. The error being the same as in the last exception.

"7. That his Honor erred in making the same ruling in reference to the difficulty between the deceased and W. I,. Clyde and in not permitting the defendant or said W. L. Clyde to testify in reference to it, notwithstanding the fact that said defendant was informed of the particulars of said difficulty prior to the homicide, and which difficulty was a recent occurrence. The error being the same as in the last exception.

"8. That his Honor erred in excluding the following portion of A. J. Suttles' testimony: 'Was present at Sloan's store when the difficulty arose between Clyde and the deceased. Clyde and McKinney had been engaged in playing crackaloo. McKinney was sitting on a box. He and Clyde were cursing each other. McKinney suddenly drew his pistol from his pocket and tried to shoot Clyde, but was prevented by witness and others from shooting him. Clyde was unarmed and drunk.' The error being that the same was admissible under '*State* v. *Smith*,' the defendant having testified that he had heard of that difficulty, and the same having been a recent occurrence.

"9. His Honor erred in not charging defendant's fifth request, to wit: 'A man is not bound, if his life is in danger or peril, to wait until he has received a fatal wound, or has some great bodily injury inflicted upon him, before he can take the life of his assailant,' and by adding thereto this modification: 'The law would not require a man, before he could act in self-defense, to wait until he was shot down, wait until he was hit.' The error being, that the modification indicated to the jury that the defendant would have to wait until just a moment before being himself shot or hit before he himself could shoot; such modification being a

serious abridgement of the right of self-defense of one in imminent danger.

"10. That he erred in refusing to charge defendant's sixth request, to wit: 'The right of self-defense is founded on the law of nature and is not superseded by the laws of society. It is a right which every one brings into society, except so far as the laws of society have curtailed it. Every man has a right to defend himself from an attack threatening him with death or serious bodily harm.' The error being, that said request was not objectionable and a declaration of the law approved by this Court and applicable to this case.

"11. That he erred in not charging defendant's nineteenth request, to wit: 'The right of self-defense is recognized by the law; a man's duty is to defend himself, and he is not bound to endanger himself by retreating, but if there is any reasonably safe way of escape, the law says he ought to do that and not take the life of his fellow-man. I don't mean by that, he has got to go away from the place because his adversary is there—he is not bound to turn out of his way; but, after the immediate conflict is commenced, it is his duty to retreat from it, avoid taking a man's life, to retire if he can do so safely, but not bound to do so otherwise, because he has the right to defend himself.' The error being, that such request was a correct statement of the law defined by this Court and applicable to the facts of this case.

"12. That he erred in not charging defendant's twentieth request, to wit: 'The mere fact that A seeks B, whom he kills, is not of itself sufficient to deprive him of his right of self-defense. His intention in seeking such person may have been perfectly lawful. If A seeks B and finds him, with no felonious intent, or malice, or premeditated purpose to injure, and a difficulty results by a quarrel brought on by B, then A is not deprived of his right of self-defense. By the words "aggressor," "being in fault," or "provoking the difficulty," the law means that there should be an intent to bring on the difficulty.' The error being, that it is a cor

rect statement of the law, applicable to the facts of this case and vitally important to the defendant.

"13. That he erred in not charging defendant's twenty-first request, to wit: 'No matter what the purpose of A may be in seeking B, if when he meets him he does nothing to provoke the difficulty, and the deceased, B, assaults him, so as to endanger his life or threaten him with serious bodily harm, A's right of self-defense is protected. Nor is this rule changed even if A has a dangerous weapon and uses it.' The error being, that it is a correct statement of the law, applicable to the facts of this case and vitally important to the defendant.

"14. That he erred in not charging defendant's twenty-second request, to wit: 'If A, in order to meet B, for no unlawful purpose, waits for him at any point, and if when he sees him coming goes out to meet him for such lawful purpose, that does not deprive him of the right of self-defense, as above charged.' The error being, that it is a correct statement of the law, applicable to the facts of this case and vitally important to the defendant.

"15. That he erred in charging the jury as follows: 'Self-defense is based upon necessity; that is the basis of self-defense, and it means that it was necessary to kill him to keep him from killing you or doing you some serious bodily harm. Then ask yourselves this question: Was it necessary for the defendant to have shot the deceased as he described to have prevented the deceased from killing the defendant or doing the defendant some serious bodily harm? If it was not, then you should find him guilty.' The error being, that he thereby reduced the defense to one of actual necessity instead of apparent necessity, and thereby also excluding a verdict of manslaughter.

"16. That he erred in charging, as to manslaughter, as follows: 'To illustrate: if two people are walking along the street, and suddenly meet and enter into a conversation and get into words, and from words into blows, and one, *without intending to kill* the other, strikes him and from the effects

of that, while he is mad, strikes him and death results, the law would not call that murder; because there was no malice aforethought. They got into a quarrel, they were in a dispute, they got into a fight, *he didn't intend to kill him,* he hit the lick while he was mad that resulted in death; the law says you ought not to have killed him, you ought not to have had a fight, but you did it while you were angry and in hot blood, and the law throws that veil of charity around your action and does not hold you to strict accountability, and reduces the killing from murder to manslaughter.' The error being, that in a sudden mutual combat, arising from a sudden quarrel, the defense is or may be manslaughter, even if the defendant did strike the blow *intending to kill.* By this charge, his Honor practically prevented the jury from finding the defendant guilty of manslaughter, if the jury believed that the defendant intended his shots to have fatal effect, even though they should be of the opinion that the shots were fired in hot blood, in mutual combat arising from a sudden quarrel."

*Messrs. Stanyarne Wilson, A. H. Dean* and *T. P. Cothran,* for appellant. *Mr. Wilson* cites: *Declarations of defendant as to his purpose was admissible:* 3 McC., 230; 2 N. & McC., 596; 13 S. C., 463; 1 Green. Ev., sec. 108; 2 Hill N. Y., 248; 1 Bish. Crim. Proc., sec. 1086; 2 Id., 625, 1 Wegrinom on Ev., secs. 102, 1732; 11 Cush., 213, 216; 145 U. S., 295; 40 N. J. L., 495; 157 Mass., 185; 68 S. C., 421. *Character of deceased for violence may be shown by proof of specific acts:* 12 S. C., 430; 29 S. C., 42. *Right of self-defense is a law of nature:* 18 Ga., 704; 17 Ala., 578; 30 Miss., 619; 55 S. C., 36. *Party bringing on a difficulty is only barred of plea of self-defense when he intended to bring it on or sought deceased for a quarrel:* 45 L. R. A., 687; 51 S. W., 214.

*Mr. Cothran* cites: *To make out manslaughter it is not necessary that there be an absence of an intent to kill:* 2

Hill, 619; 38 S. C., 346; 50 S. C., 422; 1 Spear., *389; 47 S. E. R., 676; 66 S. C., 421, 476; 34 S. C., 120; 21 Ency., 172; 48 Cal., 436; 4 D. & B., 491; 50 S. C., 423; 31 Ind., 511; 87 Ia., 144; 72 Am. Dec., 711; 35 Mich., 16; 12 Nev., 390; 29 Ohio St., 186; 1 Sneed, 409; 3 Bax., 463.

*Assistant Attorney General Townsend, Solicitor T. S. Sease* and *Evans & Finley,* contra, cite: *Witness' attention may be called to previous statements differing from one he is now making:* McKelvey on Ev., 329, 330. *Self-serving declarations denoting intention are incompetent:* 68 S. C., 424. *Character must be shown by general reputation:* Whar. Crim. Law, &c., 641; 12 Rich., 430; McKelvey on Ev., 162; 1 N. & McC., 266; 48 S. C., 249; 68 S. C., 424.

July 1, 1905. The opinion of the Court was delivered by

Mr. Justice Gary. The defendant was indicted for the murder of Miller McKinney, and the jury rendered a verdict of "guilty, with recommendation to the mercy of the Court." The defendant appealed from the sentence of the Court upon exceptions which will be set out in the report of the case. The exceptions will be considered in their regular order.

First exception: The ground of objection was not stated; but waiving this objection, the following authorities show that the ruling of the presiding Judge was free from error. *Berry* v. *Jourdan,* 11 Rich., 67; *State* v. *Collins,* 15 S. C., 373; *Hicks* v. *Ry.,* 63 S. C., 559, 41 S. E., 753. In section 866, vol. 2, of the recent and exceedingly able publication—Elliott on Evidence—the rule is stated that "a witness may refresh his memory from notes taken by counsel or other persons at a former trial, or from his own testimony at a previous trial, or from a copy of the same."

Second and third exceptions: These exceptions will be considered together. In the case of *State* v. *Adams,* 68 S. C., 421, 47 S. E., 676, it is said: "The rule is that a defendant can not introduce in his defense, his own state-

ments made to others." The rule is thus stated in 9 Enc. of Law (1st ed.), 692: "Declarations and statements made by defendant, before the homicide, regarding matters connected therewith, are not admissible in his defense, unless they form a part of the *res gestae;* but where they tend to show motive for committing the homicide, or malice in its commission, they may be proved by the prosecution." The declarations were not a part of the *res gestae.* *State* v. *Lindsey,* 68 S. C., 276, 47 S. E., 389; *State* v. *McDaniel,* 68 S. C., 304, 47 S. E., 384. These authorities likewise show that the question whether certain facts are embraced within the doctrine of *res gestae,* must be left in large measure to the sound judicial discretion of the presiding Judge.

Fourth, fifth, sixth, seventh and eighth exceptions: These exceptions present the same question and will be considered together. The appellant relies upon the case of *State* v. *Smith,* 12 Rich., 430, 440, to sustain the assignments of error. The Court in that case thus stated the facts relative to the first ground upon which the new trial was granted: "It appears from the report of the trial that when Daniel Fogarice, a witness for the defense, was on the stand, Mr. Simons, the prisoner's counsel, proposed 'to show by this and other testimony, that the deceased was a turbulent and violent man, and carried arms about him, and that this was generally known,' which 'evidence as to deceased was ruled out.'" The testimony proposed for the purpose of showing that the deceased was a turbulent man, *and that this was generally known,* was the same in effect as if there had been an offer to introduce testimony to establish the fact that the general reputation of the deceased for violence was bad. The testimony was, therefore, competent. The facts upon which the second ground for a new trial was sustained, were stated as follows: "When Michael McFeeny was sworn for the prisoner, Mr. Simons said: 'I propose to show that on the day before this occurrence (the death of Saffron), the deceased and witnesses were

employed together, and that this witness was with them; that the deceased then exhibited a quarrelsome and violent disposition, and attacked the witness; and that on this occasion the prisoner interposed and separated them, and that the deceased had threatened the prisoner.'" The testimony was excluded, and the ruling of the presiding Judge was reversed.

It will be observed, 1st, that the occurrence took place only a short time (the preceding day) before the homicide; 2d, that the prisoner had personal knowledge of, and connection with, the difficulty, and, 3d, that the deceased threatened the prisoner. The facts of the case under consideration are different from those in *State* v. *Smith* in at least the second and third particulars just mentioned. The defendant, Dean, was in no wise connected with the acts of violence described in the exceptions, except in so far as they may have been the basis of the general reputation of the deceased for violence.

In the case of *State* v. *Turner,* 29 S. C., 34, 6 S. E., 891, the exceptions assigned error in not allowing certain witnesses to testify as to the general reputation of the deceased for violence. The exceptions were sustained. The case of *State* v. *Merriman,* 34 S. C., 16, 13 S. E., 329 (cited with approval in *Sweet* v. *Gilmore,* 52 S. C., 530, 30 S. E., 395), decides that the proper mode of attacking character for violence is by testimony of general reputation, and not by proving particular acts of violence. In the case of *State* v. *Dill,* 48 S. C., 248, 26 S. E., 567, exceptions similar to those under consideration were overruled, and the Court pointed out the confusion that would arise from allowing testimony as to particular acts of violence for the purpose of showing that the party whose character was attacked was of a turbulent disposition. The case of *State* v. *Dill, supra,* is cited . with approval in *State* v. *Thrailkill,* 71 S. C., 136. The rule in this State is in accord with the weight of authorities elsewhere. 5 Enc. of Law, 875.

Ninth exception: The modification was merely

explanatory, and it did not materially change the request.

Tenth exception: The request was too sweeping in its language, as it failed to recognize the principle that a party has not the right to set up the plea of self-defense unless he was without fault in bringing on the difficulty.

Eleventh, twelfth, thirteenth and fourteenth exceptions: These exceptions will be considered together. The record does not disclose the fact whether the nineteenth request was charged or refused. Immediately after the request we find the following words used by the presiding Judge: "I do not see the use of reading any further on this question of self-defense." He did not charge the twentieth, twenty-first and twenty-second requests. The charge was full upon the law of homicide, and substantially covered all the phases applicable to the case, embracing the propositions embodied in the requests.

Fifteenth exception: The presiding Judge charged the law specifically and clearly as to the right of self-defense based upon apparent necessity; also as to manslaughter. Furthermore, when this portion of the charge is construed in connection with the entire charge, it will be seen that it was free from error.

Sixteenth exception: The presiding Judge did not charge that the jury could not find the defendant guilty of manslaughter, if the killing was intentional; on the contrary, his charge shows that his view of the law was otherwise.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.