STATE v. PAULK.

1. Where insanity is interposed by defendant as a defense under a plea of not guilty in a criminal prosecution, the defense must be proved by a preponderance of evidence.
2. The mere interposition of such a defense without any evidence to support it, does not require the State to prove its non-existence beyond all reasonable doubt.

3. Where a criminal act was the immediate result of voluntary intoxication, and committed while it lasted, the intoxication affords no excuse as defense.

4. Where the State fully proves a *prima facie* case, and a special defense, such as insanity, *alibi*, &c., is interposed, it must be established only by such a preponderance of evidence as will satisfy the jury that the charge is not sustained beyond all reasonable doubt; if not so established, the defendant should be convicted.

----

Before COTHRAN, J., Union, June, 1882.

This was an indictment against Richard Paulk, a white man, for marrying Dora Brown, a mulatto woman, on April 8th, 1882. The opinion states the case.

*Mr. David Johnson, Jr.*, for appellant.

*Mr. Solicitor Duncan*, contra.

February 15th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The defendant was indicted at the June term of the Court of Sessions, A. D. 1882, for Union county, charged with violating the provisions of the act of Assembly entitled " An act to prevent and punish the intermarrying of races," approved December 12th, 1879. The defendant claimed immunity from conviction and punishment on account of insanity caused by gross and excessive drunkenness.

The portion of the charge which is material to the questions raised in the appeal is as follows : The judge said to the jury : " That the well-established rule upon this subject is, that every man is presumed to be sane, and consequently responsible for his acts, until the contrary is made to appear by satisfactory proof. That where the defense of insanity is interposed it must, in order to avail, be sustained by proof sufficient to bear down and overcome this presumption of sanity. The defendant undertakes to do this, and must do it not beyond a reasonable doubt, but by such preponderance of testimony as to overcome the legal presumption of sanity which attaches to every citizen of sufficient age who has not been adjudged a lunatic. That this

question was solely for their determination, and must be decided upon the testimony of the witnesses whom they had seen and heard."

Upon the matter of drunkenness as an excuse for the commission of a crime, they were charged as follows:

" The law makes a distinction between criminal acts which are the immediate result of drunkenness, and committed while it lasts, and acts produced by previous habits of gross intemperance. The former are punishable, the latter not. In other words, the law deals with results and will not punish an insane man. But insanity must exist, and be made to appear by satisfactory proof, to enable him who sets it up as a defense to escape criminal responsibility. It matters not whether that delicate and mysterious organism which we call the mind, and which is supposed to be the seat and center of volition, be destroyed by the acts of the accused or by the touch of the finger of God; if the fact of insanity existed at the time of the commission of the offense, the defendant cannot be legally convicted. But if he has failed with the proof exhibited to overcome the presumption of insanity, and you believe the testimony of the witnesses for the prosecution, he is guilty and ought to be convicted. That upon this issue, as upon every material issue in the case, and upon the whole case, the accused is entitled to the benefit of every reasonable doubt."

The defendant was convicted and sentenced. His counsel, on appeal, relies upon the negative of two propositions laid down in the charge: 1. That when insanity is interposed under a plea of "not guilty " by the defendant in a criminal action, it must be proved by a preponderance of evidence. 2. That when the criminal act was the immediate result of voluntary intoxication, and committed while it lasts, the intoxication affords no excuse as defense. Both of these propositions are denied by the appellant, and error is assigned because they were charged.

The argument of appellant admits the general principle, that as sanity is the normal condition, the law presumes every man to be sane, and judgment will follow, unless the contrary is proved. But it is urged, as if this had been denied to the defendant by the judge, that where insanity is set up as a defense

and this becomes a question of evidence, the defendant is entitled to the benefit of all reasonable doubts in the mind of the jury on that subject, as well as all others pertaining to his guilt, and, therefore, he excepts to the charge, understanding, as he does, that defendant had been denied the benefit of this principle by the judge.

We think the defendant has misunderstood the meaning and scope of the charge. The judge said, that where the defense of insanity is interposed, it must, in order to avail, be sustained by proof sufficient to bear down and overcome this presumption of sanity. The defendant undertakes to do this, and must do it, not beyond a reasonable doubt, but by such preponderance of testimony as to overcome the legal presumption of sanity which attaches to every citizen of sufficient age who has not been adjudged a lunatic. In civil cases the truth of the facts alleged depends upon the weight or preponderance of the testimony, but in criminal cases, by the humanity of the law, the guilt of the defendant must appear beyond a reasonable doubt, and this applies to all essential elements of the crime.

As we understand the charge, Judge Cothran intended to apply this principle to the defense of the defendant, in the extracts above. He did not hold the defendant to the strict rule of proving beyond all reasonable doubt that he was insane when the act was committed, but he held him simply to the rule which prevails in civil cases, to wit, that he should prove it by the preponderance of testimony, with the view to give the defendant the benefit of all reasonable doubt, as to the facts required to be proved by the prosecution. He held the State bound to prove them to that extent and to the same end; when he came to the defense he relaxed the rule and required only a preponderance, stating distinctly that defendant need not prove his alleged insanity beyond all reasonable doubt; on the contrary, if but the preponderance of testimony was on that side, let the defendant have the benefit of it; concluding his charge with the following direct and unmistakable instruction, "That upon this issue (insanity), as upon every material issue in the case, and upon the whole case, the accused is entitled to the benefit of every reasonable doubt."

Thus understood, we think the charge was in accordance with the position taken by appellant, in the line of the authorities cited, and certainly as favorable to the accused as it could have been put. If we have not misapprehended the position of the appellant, he has no cause of complaint as to the first exception, because he was permitted to invoke every reasonable doubt that might exist, which is all that he seems to have claimed or was entitled to demand.

If, however, the position of appellant is, that the defendant having interposed insanity as his defense, the State was bound to prove, beyond all reasonable doubt, that he was not insane—in other words, that the mere interposition of the defense of insanity destroyed the legal presumption of sanity and at once shifted the burden of further proof, as to that question, on to the prosecution, with the responsibility of proving by some additional testimony, beyond all reasonable doubt, that the accused was not insane, and that the judge should have so charged, which from some portion of the argument it would seem that appellant claims—then we would say that such a position has no foundation in any principle or authority that we have been able to discover.

It is true that the State is bound to make out all the essential elements of the crime beyond a reasonable doubt, and until this is done the accused is in no danger, but it would be stretching the doctrine of humanity beyond all precedent to require the State also to prove that the special defense set up by the accused is false beyond all reasonable doubt, in advance of any testimony offered to support it. In a special defense like insanity, the burden of proof rests upon the defendant, and if the defense is sustained not to the extent of a reasonable doubt, but by a preponderance, then the accused becomes entitled to a verdict of not guilty.

With regard to the second proposition, the judge charged: " That the law makes a distinction between criminal acts which are the immediate result of drunkenness and committed while it lasts, and acts produced by previous habits of gross intemperance. The former are punishable, the latter not." That this distinction stated exists, as a general rule, is well settled. 1 *Arch.*

*Cr. Pl. & Pr., Waterman's Notes* 32, 832.  In *People* v. *Garbutt,*
17 *Mich.* 9, cited by appellant, the court held that voluntary
drunkenness of whatever degree constitutes no defense to the
commission of crime.     In *Smith* v. *Commonwealth,* 1 *Duvall*
224, also cited by appellant, the same doctrine is held.

In the first case, Judge Cooley states the ground upon which
this is held so strongly that I quote his exact language, instead
of simply stating the principle.   He says : "A doctrine like this,
to wit, that drunkenness should excuse, would be a most alarm-
ing one to admit in the criminal jurisprudence of the country,
and we think that the recorder was right in rejecting it.  A man
who voluntarily puts himself in condition to have no control of
his actions, must be held to intend the consequences.  The safety
of the community requires this rule.   Intoxication is so easily
counterfeited, and since it is so often resorted to as a means of
nerving the person up to the commission of some desperate act,
and is withal so inexcusable in itself, the law has never recog-
nized it as an excuse for crime," citing numerous authorities.   17
*Mich.* 19.

But Judge Cothran did not charge that voluntary drunken-
ness would preclude the idea of insanity, and that if the act was
committed while the accused was in that condition, he should be
convicted whether he was really insane or not; on the contrary,
the fair inference from the language used by him, is that he
intended that drunkenness in itself without more would not
excuse, because he followed his first remark with the emphatic
statement that,  "It matters not what may have overthrown the
volition of the accused, whether it be his own act or the act of
God, yet, if the fact of insanity existed at the time of the com-
mission of the offense, the defendant can not be legally con-
victed."    The defendant can take nothing therefore from his
exception resting upon the second proposition.

We think the charge as a whole was in accordance with the
principles which govern in criminal cases.   As is well under-
stood, one of the most important principles in such cases is, that
the accused should have the benefit of every reasonable doubt,
and this applies to all the facts necessary to his guilt, the act,
the intent, and all other essentials, and the State in the first

instance must make out its case as to all these, beyond a reasonable doubt. The legal presumption of the innocence of the accused demands this. The State having made a case which in the absence of defense comes up to this requirement, the accused may overthrow it, and this is done when he raises a reasonable doubt as to the facts made by the State, or by proving an *alibi*, insanity, or any other defense inconsistent with guilt. These defenses, however, must have some foundation in the evidence adduced by the defendant, before they can have the effect of either overthrowing the State's case, or raising a reasonable doubt thereto, supposing, as we have, that the State has made a *prima facie* case.

Now the question is, as to the *quantum* of proof required by such defense to have the desired effect; shall it be such as would prove the defense beyond a reasonable doubt? or, may it be done simply by a preponderance of the testimony? Judge Cothran held the latter, and we think he was right. According to the supposition, the prosecution, by proving the act by testimony, and applying the principle of law as to the presumed sanity of the accused, has made out its case in the first instance beyond a reasonable doubt. This must be overthrown by the accused, either by showing the charge entirely false, or by raising a reasonable doubt of its truth, but to do this certainly some testimony is required.

The question is, how much? It is answered, enough to make it reasonably certain, from the preponderance of testimony, that the defense is well founded. If, with such testimony, a case should go to the jury with instructions from the court that after considering the whole testimony, with the legal presumptions that appertained both as to the question of the sanity and the innocence of the accused, they are satisfied that the charge has been proved beyond all reasonable doubt, then to find a verdict of guilty, in our opinion no exception could be sustained on the ground that the State had not been held to the rule of reasonable doubt, or that the defendant had been denied its benefit.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.