## STATE v. NANCE.

1. The Circuit Judge is the trier of the competency of a juror challenged for cause. The law does not prescribe the questions to be asked, but only indicates the points upon which the judge is to be satisfied; and if counsel are not satisfied with the interrogatories propounded, he should object at the time.
2. Where the deceased, on the day before his death, said he never expected to get over his wound, and stated who had inflicted it, and soon thereafter became speechless, the judge did not err in receiving this statement as a dying declaration.
3. During the trial some of the jurors retired, for a few moments, to their room, in which some of the witnesses who had testified were sitting, but it did not appear that any communication passed between them. *Held,* that this was not such an irregularity as would avoid the verdict.
4. The testimony being that the accused, with others, attacked the house of the deceased at midnight and having been driven off renewed the attack, whereupon deceased rushed out again attempting to drive the assailants off, and received the wound from which he died, the Circuit Judge did not err in charging the jury that there was no testimony as to self defence or such as would raise a question of manslaughter.
5. Where the defendant relies upon an *alibi* there must be a·preponderance of evidence sufficient to establish such a defence, or to raise a reasonable doubt.
6. The power to grant or refuse a motion for new trial belongs exclusively to the Circuit Judge, and from his decision on the subject there is no appeal to this court. This applies to a motion for new trial on the ground of newly discovered evidence.

Before WALLACE, J., Newberry, July, 1885.

The opinion states the case.

*Messrs. Goggans & Herbert* and *John B. Jones,* for appellant.

*Mr. Solicitor Duncan,* contra.

June 28, 1886.    The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.    At the July term of the court for
Newberry County a true bill was found against three women,
viz.: Vinnie Nance, Martha Lyles, and Amy Rutherford, for the
murder of an old colored man, Daniel Kleckley, by striking him
with a "rock" or stone.    Upon motion of defendants' counsel,
the presiding judge ordered a severance, and Vinnie Nance alone
was put upon trial.    At the request of the counsel for the defen-
dant the jurors were sworn on their *voir dire.*    When a colored
juror was called the presiding judge propounded the usual ques-
tion as to "relationship," &c., to the prisoner; but, the accused
being a negro woman, when a white juror was called he omitted
the question as to "relationship," and simply asked him "if he
knew of any reason why he could not find a just verdict in
the case, according to the evidence," and being answered in
the negative, ordered him to be presented.    No objection was
made, at the time, to this mode of proceeding or any motion
made "to introduce any other competent evidence in support of
objection to any juror."

Sarah Ann Douglass testified "that on the night of June 27,
1885, between the hours of 12 and 1 o'clock, three women came
to the house of her grandfather the deceased; that she was
waked by an altercation between the deceased and one of the
women, whom she recognized as Martha Lyles; that when she
came out the three women had hold of the old man and were
pulling him down towards the woods; that she and her brother
(a boy of about 14) and another boy ran out of the house after
them; that she ran out with an axe in her hands and they chased
the women off, after which she and the deceased and the two
boys went back into the house and barricaded the door.    Three
women came back and attempted to force open the door, but
failed.    The women then walked round the house, and finally
deceased snatched the door open and they all rushed out at
them again to run them off from the house.    Then one of the

women, whom she recognized as Vinnie Nance, the defendant, threw a rock and knocked the old man down. The women then left and she and the boys carried the old man into the house where he died on July 1st, four days thereafter." She testified positively "that she recognized two of the women as Martha Lyles and Vinnie Nance; that she did not recognize the third; and that she saw Vinnie Nance, the defendant, throw the rock that struck down the deceased."

The solicitor then offered in evidence, as the dying declarations of the deceased, a statement made under the following circumstances: Robert Davidson was with deceased several days after he received the injury and until he died, certainly on Tuesday and Wednesday, the latter being the day on which he died. On Tuesday morning, just before deceased became speechless, he said that "he was very badly wounded and he never expected to get over it. Said he never expected to get over this wound," and in the same conversation he said that "big Martha and Vinnie Nance did him so—murdered him up—beat him." Motion to exclude the testimony was overruled.

The defendant introduced testimony principally for the purpose of establishing an *alibi*. The State offered nothing in reply. Before the commencement of the argument, several of the jurors retired for a short time to the jury room, in which the witnesses for the State had been confined during the trial, several of whom were still in the room. But it did not appear that there was any communication between the parties, thus accidentally thrown together in the same room for a few moments.

There were no requests to charge. The case being submitted to them, the jury rendered a verdict of "guilty." The counsel of the defendant made a motion for a new trial, and, that being refused, they now appeal to this court upon the same grounds, which we will now proceed to consider in their order.

The defendant insists that his honor erred in overruling the motion for a new trial, upon each of the following grounds: First. Because the jurors on their *voir dire* were not properly examined, the only question asked them being, "Do you know any reason why you cannot find in this case, a just verdict according to the evidence?" Section 2261 of the General Statutes pro-

vides that, "The court shall, on motion of either party in suit, examine on oath any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection," &c. In all the cases there is concurrence in the view that the Circuit Judge is the trier to decide the question made by the challenge of a juror for cause. See *State* v. *Coleman*, 20 *S. C.*, 450.

We do not understand that the law prescribes any particular formula of questions required to be propounded by the Circuit Judge, but only such as will satisfy him upon certain points indicated. The words of the provision are, "to know whether," &c. If the counsel for the accused considered the examination by the court as perfunctory or otherwise unsatisfactory, the objection should have been made at the time, or other evidence offered to support the objections to any particular juror. It does not appear that there is even an allegation of a well grounded objection to a single juror, who was sworn in the case. When a white juror was called, it seems that the judge did not consider it necessary to make enquiry whether he was "related" to the accused, who was a negro woman, and we cannot say that such omission was error of law. "The presiding judge must determine on the character of the questions proposed and when the examination shall close." *State* v. *Coleman*, 8 *S. C.*, 239.

Second. "Because certain statements alleged to have been made by the deceased were improperly admitted as dying declarations." The rule is well settled that, when one who has received a wound, from the effects of which he is about to die, makes a statement as to the circumstances under which he received his mortal injury, such statement may be admitted in evidence as his "dying declarations," *provided*, "it appears satisfactorily that death was imminent at the time, and that the declarant was so fully aware of it as to be without any hope of life." Two days after he received his injury and the day before his death, the deceased, Daniel Kleckley, said to several persons that he was very badly wounded "and he never expected to get over

it, and that big Martha and Vinnie Nance had done him so."
Was this statement made when death was imminent, and the
declarant was so fully aware of it as to be without any hope of
life? It is true that he said nothing expressly about living or
dying or as to approaching death. But it seems to us, that, con-
sidering the condition and character of the deceased, he used
equivalent words to express the idea; and soon after making the
statement, he became speechless and died the next day. Under
these circumstances we cannot say that the judge erred in refus-
ing to exclude the testimony. See *State* v. *McEvoy*, 9 *S. C.*,
212; *State* v. *Quick*, 15 *Rich.*, 342; *State* v. *Washington*, 13 *S.
C.*, 458; *State* v. *Gill*, 14 *Id.*, 415. In the case of Quick, the
words were, "Leggett Quick killed me," and in the case of Wash-
ington, they were, "I am going to die and Daniel Washington
killed me."

Third. "Because certain jurors sworn to try the case, after
being empannelled, were permitted to be alone with certain of
the State's witnesses in the privacy of the jury room, where the
witnesses of the State were confined during the trial." It is true
as urged, that in practice, great care should be taken, especially
in State cases, to guard the jury against all irregular or improper
influences. This is absolutely necessary in order to secure a
pure administration of justice. But there may be objections
more fanciful than real. In this case it does not appear that the
jurors, who, before the argument commenced, retired for a
moment into the jury room, held any communication whatever
with the witnesses still there; and we cannot regard this acci-
dental circumstance as an irregularity of so grave a character as
should set aside the verdict. See *McCarty* v. *McCarty*, 4
*Rich.*, 598; *Smith* v. *Culbertson*, 9 *Id.*, 106; *State* v. *Tindall*,
10 *Id.*, 212.

Fourth. "His honor erred in charging the jury that a pre-
ponderance of testimony was necessary to establish the *alibi*
or raise a reasonable doubt. And that there was no testimony
as to self-defence, or such as would raise a question of man-
slaughter," &c. In charging the jury, a judge cannot be
expected to state the whole law, which would often be confusing
and misleading; but only such of it as is applicable to the facts

proved.    In this case it seems that an old man, living with his grandchildren, was assailed in his house at night by three women. We fail to find in the testimony that the deceased, Kleckley, "rushed out with an uplifted axe and chased some persons down the hill, and when they returned and called him out to speak to him, he again ran out with axe in hand, and was struck the blow while advancing upon them," &c.

The witness, Sarah Ann Douglass, testified that when she first saw them "the three women had hold of the old man (the deceased), and were pulling him down towards the woods; that she ran out with an axe in her hands, and they chased the women off."    After which she and the deceased and the two boys went back into the house and barricaded the door; three women came back, and failing to force it open, walked around the house, and finally the deceased "snatched the door open" and they all rushed out at them again "to run them off from the house; that then Vinnie Nance threw a rock and knocked the old man down," &c., of which injury he died.    In this midnight attack upon the domicil of this old man, he had the right to defend himself and his premises.    The whole trouble was caused by the three women, who were the aggressors from the beginning to the end.    We cannot hold that the judge erred in charging that there was no testimony as to self defence, or such as could raise a question of manslaughter.

Nor can we say that he erred in charging the jury that "a preponderance of evidence was necessary to establish the *alibi* or raise a reasonable doubt."    If a party charged with crime pleads a particular defence, such as insanity or an *alibi*, the fact must be proved as it is alleged by him.    Preponderance of evidence is the lowest degree capable of producing conviction.    Less cannot be required of one whose duty it is to establish a particular fact, subject, of course, to the general rule that a party charged with crime is entitled to the benefit of all reasonable doubts.    "Where the State proves a *prima facie* case and a special defence, such as insanity or an *alibi*, is interposed, it must be established by such a 'preponderance of evidence' as will satisfy the jury that the charge is not sustained beyond all reasonable doubt.    If not so established, the defendant should be convicted."    *State* v. *Paulk*, 18

*S. C.*, 515; *State* v. *Bundy*, 24 *Id.*, 439; *Commonwealth* v. *Webster*, 5 *Cush.*, 323; *State* v. *Johnson*, 59 *Ga.*, 142.

The fifth exception complains that the act of the legislature which fixed the time for holding the court at which the defendant was convicted, was unconstitutional and void. We are not sure that we understand this exception, as the ground of the alleged unconstitutionality is not stated. But the point was not pressed in the argument of defendant's counsel, and we suppose that it was abandoned.

Sixth. The defendant also made a motion before the Circuit Judge for a new trial upon the ground of newly discovered evidence, which, being refused, she renews in this court. This alleged newly discovered evidence principally tended to discredit the testimony of Mary Ann Douglass, the principal witness for the State, by showing that she had soon after the occurrence, stated that "Martha Lyles and Vinnie Nance were there that night; that they pulled Kleckley down the road, &c., but she did not know which one or who threw the rock that killed the deceased," &c. (See the affidavits printed in the brief.) It does not strike us that the alleged newly discovered evidence was of such a character as to authorize the Circuit Judge to grant a new trial on that ground. But it is not necessary to go into that subject. In the class of cases to which this belongs, this is only a court for the correction of errors at law, and has no power either to hear an original motion for a new trial upon the ground of subsequently discovered evidence, or to review the order of a Circuit Judge refusing such a motion, except in the single case where the Circuit Judge refuses to grant such a motion upon the ground that he has not the power to do so. The power to grant or refuse a motion for new trial belongs exclusively to the Circuit Judge, and from his decision on the subject there is no appeal to this court. See *State* v. *David*, 14 *S. C.*, 432; *Steele* v. *Railroad Company, Ibid.*, 324, and the authorities there cited.

The duty of this court is rendered more painful by the fact that the defendant is a woman; but after a fair trial, and aided by zealous and able counsel, she has been convicted by a jury of the country of the crime of murder, and it only remains for us to announce the penalty of the law, which is, that the judgment

of the Circuit Court be affirmed, and the case remanded to that court for the purpose of enabling it to assign a new day for the execution of the sentence heretofore imposed.