## DAVIS v. NORTH WESTERN R. R. CO.

1. MASTER AND SERVANT—APPLIANCES.—"Safe and suitable" appliances in the common acceptance of the terms mean "reasonably safe and suitable," and these words construed with whole charge could not have led jury to conclude that master must furnish absolutely safe appliances.

2. RAILROADS—CHARGE.—Portions of charge here complained of when construed with its modifying clauses states that railroad is liable if cars furnished were unsafe, and that was proximate cause of the injury, and not that it would be liable if it furnished such cars as a railroad would not ordinarily use for such purpose.

3. APPLIANCES.—CHARGE AS TO ASSUMPTION OF RISKS by employee from defective appliances was substantially in the language of the Constitution. Where the general import of a charge states the law, this Court will not reverse the judgment because of the use of a disjunctive conjunction where a copulative one should have been used. Suitable appliances defined.

Before WATTS, J., Clarendon, October, 1905.    Affirmed.

Action by Carter Davis against Northwestern Railroad Co. From judgment for plaintiff, defendant appeals.

*Mr. Joseph F. Rhame,* for appellant, cites: *Master is required to furnish only reasonably safe appliances:* Pierce on R. R., 370; Patterson on Ry. Accd. Law, sec. 285; 70 S. C., 470; 51 S. C., 306; 69 S. C., 109. *Appliances should be reasonably safe and not of the kind ordinarily in use:* 72 S. C., 411.

*Mr. W. C. Davis,* contra, cites: *Charge construed as a whole did not instruct jury that appliances must be absolutely safe:* 52 S. C., 443. *What other railroads ordinarily use is competent on question of care:* 51 S. C., 307; 66 S. C., 302; 2 Green. Ev., 250. *An unsafe or defective appliance is unsuitable:* 60 S. C., 18; 66 S. C., 317; 61 S. C., 480. *As to construction of charge:* 66 S. C., 215; 23 S. C., 199; 29 S. C., 34; 37 S. C., 335; 41 S. C., 440; 47 S. C., 25; 43 S.

C., 132; 55 S. C., 568; 51 S. C., 306; 54 S. C., 90; 58 S. C., 222; 53 S. C., 121; 57 S. C., 325; 43 S. C., 217; 72 S. C., 355. *As to construction of constitutions:* 8 Cyc., 730, 731, 734; Black on Int. of L., 34, 48, 62.

October 19, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff recovered judgment in this action for damages for alleged negligence of defendant in furnishing unsafe and unsuitable cars and appliances, whereby he was injured while unloading cross-ties as an employee of defendant.

The exceptions assign error in the charge to the jury. The first and second exceptions complain because the Court charged plaintiff's seventh and eighth requests as follows:

"7. I charge you that it is the duty of the railroad to provide safe and suitable machinery for the use of its operatives; and if it delegates this duty to another, it is responsible to its servants for any injury caused by the negligence of any person to whom the performance of this duty has been entrusted.

"8. I charge you that it is the railroad's duty to provide safe and suitable machinery and appliances for the work in hand, and the employee has the right to assume that the master has discharged its duty in this respect, and is not bound to exercise care in ascertaining whether the master has so acted."

The error alleged is that the charge made it the duty of the railroad company to furnish its employee with absolutely safe and suitable appliances. The universally accepted meaning of the words "safe and suitable" appliances in reference to the duty of the master to the servant is "reasonably safe and suitable." It is perfectly manifest that the jury could not have been misled into supposing that they were used in the sense claimed by appellant, for a reading of the whole charge shows that the Court iterated and reiterated, over and over again, that the master's duty was to furnish

reasonably safe and suitable appliances.    This is also shown in the extract from the charge quoted in the third exception, which was very properly abandoned.

The fourth exception complains of this charge: "If you find that the alleged truck cars were not such cars as railway companies would ordinarily use for hauling cross-ties, that they were unsafe, insecure and dangerous in the conduct of such business, and that such unsafe, insecure and dangerous condition was the proximate cause of, and contributed to, plaintiff's injury, and he sustained any injury thereby, then the railroad is responsible in damages to the plaintiff."

It is objected that the first clause of the charge, "If you find that the alleged truck cars were not such cars as railway companies would ordinarily use for hauling cross-ties," tended to lead the jury to the conclusion that they might infer negligence on the part of defendant, if they found that the cars used by defendant on that occasion were not such as railway companies would ordinarily use for hauling cross-ties.    It is true that the test of a master's duty in furnishing appliances is, whether he furnished such as were reasonably safe and suitable, and not whether they are of the character ordinarily in use—*Jennings* v. *Edgefield Mfg. Co.,* 72 S. C., 411—but the quoted charge shows that the first clause was so modified by the clauses following as to make the liability of the railroad to depend upon whether the cars furnished were unsafe and proximately caused the injury.

The defendant made the following request to charge: "V. The jury is further instructed: That, where an employee, after having the opportunity of becoming acquainted with the risks and dangers of his situation, and as such employee accepts them, he cannot complain if subsequently injured by such exposure; and if such were the conditions existing with reference to the plaintiff at the time of the alleged injury, he cannot recover damages of the defendant for same."

To which the Court responded: "I charge you that with this modification: He does assume the risks and dangers incident to the situation; but if he was injured by the carelessness and negligence of the defendant railroad in failing to furnish him with reasonably safe and suitable appliances, and to keep the same in reasonably safe and suitable repair, then I charge you that any knowledge by an employee of an unsafe or unsuitable appliance shall be no defense to an action for injury caused thereby."

The defendant also made the following request to charge: "VI. The jury is instructed as matter of law: That if the jury find that the plaintiff, at the time of the alleged accident and injuries received by him, was an employee of the defendant, he is as much charged with knowledge of the ordinary risks of the work and service in which he was engaged as the defendant; and if the jury further find that, on that occasion, the plaintiff was injured, and that he was injured through his failure to exercise that knowledge of the ordinary risks of his employment which he is presumed to have had, then he is not entitled to recover of the defendant damages for such injuries."

To which the Court responded: "I charge you that, with this addition: But if the appliances and machinery and so forth furnished by the defendant railroad company were unsuitable and unsafe, were not reasonably safe and suitable, although the plaintiff might have known these facts, yet that would be no defense under the Constitution and laws of our State in an action of this sort; if the party was injured by reason of machinery which was unsafe and unsuitable, although he had knowledge of that fact, that would be no defense on the part of the railroad, if the railroad was careless and negligent in furnishing him unsafe and unsuitable machinery to do his work with, and that was the direct and proximate cause of his injury."

It is contended, with reference to these instructions, that they tended to lead the jury to believe that if the injured employee had knowledge beforehand that the appliances were

unsafe *or unsuitable,* such knowledge would constitute no defense, that the jury might conclude that the appliances were not unsafe but merely unsuitable, and in that event would be debarred from considering whether plaintiff had knowledge thereof and the effect of such knowledge. This fine drawn point is made upon the use of the disjunctive "or" instead of the copulative "and" between "safe" and "suit-able" in this one instance, which hardly could have misled the jury, especially when it was followed and explained by the sixth instruction quoted above, which should have re-moved all doubt in the mind of the jury, if any existed, as to the meaning of the fifth instruction. It would greatly har-rass the practical administration of the law for the appellate Court in reviewing charges to the jury to become hypercriti-cal or a stickler for the technical rules of philology in every phrase and clause, and reverse verdicts for some loose ex-pressions or some silent misuse of a word, when the general import of the charge stated the law. Any portion of a charge to which exception is taken should be fairly con-strued with reference to the clear tenor and import of the whole, and as an effort to explain the law of the case to men of ordinary or average education and intelligence. The average juryman has little knowledge and less concern about fine distinctions, but generally has a desire and capacity for sufficient information to enable him to do substantial justice between the parties.

The Court was endeavoring to qualify defendant's re-quests to charge with instructions as to the provisions of the Constitution, art. IX., sec. 15, to the effect that the "know-ledge by an employee injured of the defective or unsafe character or condition of any machinery, ways or appliances, shall be no defense to an action for injury caused thereby, etc." As declared in *Youngblood* v. *R. R. Co.,* 60 S. C., 19, 38 S. E., 232, and *Bodie* v. *Ry. Co.,* 66 S. C., 317, 44 S. E., 943, "the object of this provision was to take from a defendant *that failed to furnish suitable machinery* the right to defeat an action by the employee by showing that he

did not act with due care in voluntarily operating the machine after knowledge of its defective condition." Here this Court used the word "suitable" as meaning "safe or not defective," and such is its meaning when applied to appliances, the question under consideration being whether a personal injury resulted from the character or condition of the appliance, and not a question relating merely to the fitness, utility or adaptability of the appliance to accomplish the ends for which it was employed, without regard to the safety of operatives. As applied to the subject in hand, a suitable appliance must necessarily be an appliance reasonably safe and proper, or reasonably free from defects which render it dangerous to operate it. The charge, therefore, was substantially in the language of the Constitution.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.