8433

### STATE v. LONG.

1. EVIDENCE—DYING DECLARATIONS.—Rule as to admission of dying declarations stated.

2. JURORS—VERDICT.—The Court should not permit inquiry as to the manner the jury used in arriving at a verdict. Here an agreement among the jurors that they would all agree to whatever verdict two-thirds of them voted for *held* not to invalidate the verdict, the information having been obtained not on affidavits of jurors, but by the Court from the jury, after calling them into the box after having been dismissed.

3. NEW TRIAL.—It is within the discretion of the trial Judge as to how much argument he will hear on a motion for new trial.

4. CHARGE.—The charge here complained of as not instructing the jury that they must acquit the defendant unless they were satisfied beyond a reasonable doubt that he had failed to establish his defense of self-defense by the preponderance of the evidence, *held* to have covered the point, and if not, the failure to so instruct is not reversible error because not requested.

Mr. JUSTICE WATTS *dissents.*

Before SEASE, J., Greenwood, January, 1912. Affirmed.

Indictment against Geo. W. Long. Defendant appealed on the following exceptions:

1. "Because the Circuit Judge erred in allowing the witness, Dr. Kennedy, to testify that Luther Mullinax, the deceased, told the witness at Augusta, several hours after he was shot, 'If the thing carries me off, they were after me—not my negroes.' It being respectfully submitted that such a statement was not in any sense a dying declaration—that it was calculated to prejudice his case before the jury in that it sought to connect and hold the defendant responsible for the motive prompting the town council of Troy to issue the warrants and make the arrests with which the defendant had nothing to do and knowledge of which was not brought home to him.

"And further, it was error because it contained simply the expression of an opinion, on the part of the deceased, as to the motive of Long and the town council without any statement upon which the opinion was founded—all of which was calculated to prejudice the rights of the defendant.

2. "The Circuit Judge erred in allowing the witness, Mrs. Mullinax, to testify as to what the deceased said, as follows: 'He told me he was shot for nothing. That I would always know he was shot for nothing. I asked him if he had his knife in his hand. He said he did not. He went on then and told me he would have a note due on the first day of November. He told me he had a note due and try to be prepared to meet it when it was due on the first of November. He also told me of thirty-four and one-half acres of land he had made a request of me in regard to that.'

"Also in allowing the witness to testify, 'When I got to where he was, before we took him to Augusta, he told me he was shot for nothing.'

The errors being:

A. "The bald statement that 'he was shot for nothing' being incompetent for the reason that it was not a dying declaration, but a mere statement as to a conclusion on the part of the declarant, without giving the facts upon which the conclusion was based.

B. "The statement that 'he was shot for nothing,' made before deceasel was taken to Augusta, being incompetent because it was not a dying declaration.

C. "The statement as to bank note and the land being incompetent for the reason that they were not dying declarations in that they did not in any way relate to the difficulty resulting in the homicide.

D. "None of the said statements being competent for the reason that they were not dying declarations and competent as such because the foundation had not been laid within the meaning of the rule prescribed by law.

3. "The Circuit Judge erred in allowing the various witnesses to testify as to the conduct of the officers of the town of Troy and the conduct of the officers of the Bank of Troy, with reference to the deceased and to the negroes, who had been arrested the day before—it being respectfully submitted that such testimony was absolutely incompetent as to the defendant—he alone being on trial, and makes no difference as to what may have been the attitude of others to the deceased. All of which was calculated to prejudice and did prejudice the defendant's case with the jury.

4. "Because the Circuit Judge erred in charging the jury that defendant's plea was self-defense, whereas the plea was not guilty. Which plea put the State to proofs of every material allegation in the indictment beyond a reasonable doubt. Further, the defendant's plea was, in addition to the plea of self-defense, that he was an officer of the law, having the legal right to arrest the deceased and to use so much force as was necessary for that purpose.

"The error of the Circuit Judge being, that by his charge he limited the plea of defendant to that of self-defense alone.

5. "Because the Circuit Judge erred in charging the jury as follows: 'Therefore, as an illustration you will take all of the testimony in favor of his plea of self-defense, put it in imaginary scales in your mental picture, put all of the evidence, on one side of the scales or balance, in favor of his plea, and all of the evidence against it, on the other side, and if it stands evenly balanced in your mind, the plea of self-defense falls on the ground and has not been made out.'

"The error being, that such a charge deprives the defendant of the benefit of reasonable doubt. If the testimony was evenly balanced that was bound to raise a reasonable doubt as to whether or not the plea of self-defense had been made out and the defendant was entitled to an acquittal.

The Circuit Judge should have charged the jury in connection with the above that if they had any reasonable doubt, as to whether or not the plea of self-defense was made out, that defendant was entitled to the same and he should be acquitted.

6. "Because the Circuit Judge erred in charging the jury that the defendant, Long, had a legal right to arrest the deceased; that he was not bringing on the difficulty in seeking to make the arrest; that he was not bound to retreat if assailed and that this constituted the difference between an officer seeking to make arrest and the ordinary individual, whereas he should have gone further and charged the jury that there was another vital distinction between an officer and an individual, to wit: that it was the duty of the defendant, as an officer of the law, to go forward in the discharge of his duty and make the arrest; that he had the right to use so much force as was necessary and that if he was assailed, or attacked, by the deceased, he had a right to repel force by force, and if, in the encounter, death resulted, that the defendant was justifiable under the rights given to an officer by law and not simply excusable under the law of self-defense.

"In other words, the Judge erred in applying the rule of self-defense to an officer of the law, who had the right to make the arrest, and in requiring the defendant to bring himself within the rules pertaining to the law of self-defense rather than within the rule applicable to the justification of an officer when he kills by using so much force as is necessary in seeking to make an arrest.

7. "Because the Circuit Judge erred in charging the jury that while an officer of the law, when assailed, has the right to repel force by force, that it was his duty to avoid the necessity, if he could reasonably do so with safety to himself. The error being, that the Judge did not go further and tell the jury, in the same connection, that the officer had the right to go forward and make the arrest, using

as much force as was necessary for such purpose, even unto the taking of life.

8. "Because the Circuit Judge erred in refusing to grant a motion for a new trial, made with reference to the illegal conduct of the jury in reference to the manner in which it arrived at a verdict, when it appeared, not only by the affidavits of the jurors, but by the uncontradicted testimony elicited by the Judge in open court:

(a) "That the verdict was arrived at in a manner contrary to and in the very teeth of the Constitution by means of an agreement of the jurors, made before the verdict was found, that the two-thirds rule would control and constitute the verdict and not the unanimous rule as required by law.

(b) "Because the undisputed facts, elicited by the Court on its own motion before the jurors in open Court, showed that the verdict was a nullity because reached in a manner contrary to law, viz., by the adoption of the two-thirds rule.

9. "Because the Circuit Judge erred in holding that a verdict reached by an agreenemt made beforehand that the two-thirds rule is to govern and make the verdict, is a unanimous and legal verdict.

10. "Because the Circuit Judge erred in holding that jurors have a right, notwithstanding the Constitution and the law, to agree that the verdict shall be found the way that two-thirds of the jurors vote by ballot, coupled with the agreement that all the jurors are to be bound by the way that two-thirds of the jurors vote, and that a unanimous ratification made thereafter, in pursuance of said agreement, validates and makes legal the verdict.

11. "Because the Circuit Judge erred in refusing to hear argument of counsel for the defense, on motion for a new trial on the merits, thereby denying to the defendant the constitutional right to 'be fully heard in his defense by himself or by his counsel.'

12. "Because his Honor erred in refusing, or neglecting, to charge, as requested by counsel for the defendant, that

the defendant was not responsible for any action on the part of the town council of Troy to the deceased nor for any bad feeling that might have existed between the town council and the deceased, to which the defendant was not a party.

13. "His Honor erred in charging the jury: 'A man armed with authority to make a lawful arrest cannot kill for the purpose of making the arrest.'

"Whereas, he should have charged that an officer, who is in the discharge of his duty, having legal authority to make an arrest, has the right to use so much force as is necessary, even to the taking of the life of the person sought to be arrested.

"His Honor erred in charging the jury, after telling them that an officer is not bound to retreat, when he is assailed by the person whom he is seeking to arrest: 'That is the fundamental difference between the rights and duties of an officer and the rights and duties of an individual not in the exercise of the duty of an officer.'

"Thus leading the jury to believe that that was the only difference, whereas, in that connection, he should have charged the jury that an officer, armed with the legal right to make an arrest, is not only not bound to retreat, when assaulted, or resisted, not only cannot be charged with bringing on the difficulty, but that he has the right to go forward and make the arrest even if it be necessary to take the life of the person whom he is seeking to arrest.

15. "It is respectfully submitted that his Honor, in refusing to grant a new trial, on the ground that the verdict of the jury was illegal, in that it was not a unanimous verdict, but was the result of an agreement among the jurors to adopt a two-thirds majority vote, on the question of guilty or not guilty, committed error as follows, to wit:

(a) "That it deprived the defendant of his liberty, without due process of law, and denied to him the protection of

the law as guaranteed to him by section 1 of article 14 of the Constitution of the United States.

16. "It is further submitted that his Honor committed error in not hearing counsel for the defendant on their motion for the new trial on the merits of the ground submitted in this behalf and when they requested to be so heard, in ruling and holding that he would not hear them on this ground, stating that he had already decided the question raised adverse to their contention, as embodied in said ground, the error being:

(a) "Article I, section 18, of the Constitution of South Carolina, provides that in all criminal prosecutions the accused shall be fully heard in his defense by himself or by his counsel or by both, and it is respectfully submitted that the ruling of his Honor deprived this defendant of this right, guaranteed to him by the Constitution of South Carolina.

(b) That the ruling of his Honor, in this behalf, was violative of article VI, Constitution of South Carolina, which provides that an accused shall have the assistance of counsel for his defense.

17. "Because, it is respectfully submitted, that his Honor erred in charging the jury that it was incumbent upon the defendant to make good his affirmative defense by the preponderance of the evidence—the error being that the defendant was an officer of the law, authorized to arrest the deceased; it was his duty to go forward and use as much force as was necessary to make the arrest; he was not guilty of any offense unless he used more force than was necessary and the burden to show this was on the State, before a conviction could he had."

This case was argued at the April term, 1912, before four Justices, who were equally divided as to the 5th exception involving the law of self-defense.

The case was on October 7, 1912, ordered reargued at the November term upon said question.

*Messrs. Grier, Park & Nicholson* and *Featherstone & McGhee,* for appellant, cite: *There was error in refusing new trial because of the manner the jury arrived at their verdict:* 22 C. C. A. 283; 140 U. S. 153; 21 L. R. A. (N. S.) 27; 19 L. R. A. (N. S.) 733; 4 Rich. L. 594; 4 Rich. 594; 2 Rich. 119; Bay 267, 315; 5 L. R. A. 525; 32 S. C. 408; 24 Am. Dec. 476; 107 Am. St. R. 841; 54 Am. R. 404; 34 Am. R. 808; 44 Am. R. 701; 108 Am. St. R. 973; 2 Bail. 518; 13 L. Ed. 1025. *Rights of an officer in making an arrest:* 1 Hill L. 344; 1 East P. C. 481; 2 Ency. 851; 84 S. C. 359; 2 Bish., secs. 647-650; 9 Am. St. R. 384. *Defendant is entitled to the benefit of reasonable doubt as to his plea of self-defense: State* v. *Bodie,* 33 S. C. ; 38 S. C. 333; 66 S. C. 455; 72 S. C. 224; 76 S. C. 94; 27 Am. R. 329; 13 Am. R. 492.

*Solicitor R. A. Cooper* and *Messrs. Tillman & Mays, Cothran, Dean & Cothran* and *Wm. N. Graydon,* contra.

*Messrs. Tillman & Mays* cite: *Rule as to admissibility of dying declarations:* 35 S. C. 290; *State* v. *Petsch,* 43 S. C. *The charge as to the proof of self-defense is not error:* 38 S. C. 346; 76 S. C. 94; 73 S. C. 260; 71 S. C. 136. *Rights of an officer in making an arrest:* 21 Cyc. 797; 59 S. C. 297; 1 S. C. 297. *Method of jurors in arriving at a verdict should not be inquired into:* 9 Rich. 106; 25 S. C. 172; 32 S. C. 403; 39 S. C. 388; 40 S. C. 310; 45 S. C. 668; 54 S. C. 154. *Hearing counsel on motion for new trial:* 17 N. Y. Sup. 797; 80 Wis. 107.

The final opinions in this case were filed on December 7, 1912, but remittitur was held up on application for writ of error to the United States Supreme Court until

February 8, 1913. The first opinion was delivered by

MR. JUSTICE WATTS. The defendant was indicted for the murder of Luther Mullinax and tried for the same at the January term of Court of General Sessions for Greenwood county, 1912, and found guilty of manslaughter. A motion for a new trial having been made and overruled by his Honor, Judge Sease, he was sentenced to three and a half years in the penitentiary. An appeal was taken, alleging numerous errors on the part of the presiding Judge. The exceptions, 17 in number, can be grouped together and considered under general heads.

1. The alleged error on the part of the trial Judge in admitting testimony over the objection of defendant.

2. Alleged error on the part of his Honor in his charge to the jury.

3. Alleged error to the manner in which the verdict of the jury was arrived at and in not granting a new trial and setting the verdict of the jury aside.

4. Alleged error on the part of his Honor to hear counsel in full on their motion for a new trial.

As to the first, a careful examination of the record in the case will show that his Honor was not in error in admitting the evidence of Mrs. Mullinax, as far as he allowed it to come in as a dying declaration. The rule laid down as to dying declarations is thus stated: "To render these declarations admissible, it was only necessary that the trial Judge should be satisfied. 1st. That the death of the deceased was imminent at the time the declarations were made. 2d. That the deceased was so fully aware of this as to be without hope of recovery. 3d. That the subject of the charge was the death of the declarant and the circumstances of the death was the subject of the declaration." *State* v. *Banister,* 35 S. C. 290, 14 S. E. 678; *State* v. *Petsch,* 43 S. C. 148, 20 S. E. 993.

As to the other exceptions under this head, no specific errors are pointed out to direct our attention to what was objected to and an examination of the record by us fails to reveal any testimony on this ground at the trial that was objected to by the defendant. The only testimony along this line is that of defendant's witnesses, who testified without objection. The exceptions raising this question are overruled.

As to the exceptions that allege error in the manner in which the verdict of the jury was arrived at: An unbroken line of decisions by the Courts of this State, even before the case of *Smith* v. *Culbertson,* 9 Rich. Law 106, up to this time sustains the position taken by his Honor, Judge Sease. In *Smith* v. *Culbertson,* Wardlaw, Judge, says: "But here the privacy of the jury room is to be invaded. The grounds upon which the assent of the jurors to the verdict publicly rendered was given are to be scrutinized; and men sworn to render a true verdict according to the evidence, are to be heard to declare that they agreed to abide the determination of chance, and yielded their assent to the verdict only because they had entered into this agreement, plainly repugnant to the obligation of the oath they had taken."

The Court also says: "The mischiefs, the delays, the arts, the scandal likely to ensue come naturally to our thoughts, when we imagine the encouragement given to the pursuit of jurors by disappointed suitors, for the purpose of obtaining affidavits to invalidate verdicts regularly rendered. Any affidavit made by a juror for ths purpose, after separation of the jury, is dangerous and suspicious; but especially so is an affidavit showing gross impropriety in which all the jurors participated, and which at its commission was known only to themselves. A verdict decided by chance may be set aside. So may a verdict which was decided by a bare majority of the jury, and one which was rendered against the will of any juror. Yet verdicts must be generally

attained by compromise of some sort. The reasons of jurors are no doubt often ridiculously absurd. There must, however, be an end to litigation. After a verdict has been rendered, and the jurors have dispersed, a juror would not be heard who would say that his assent was forced, or was given under some misconception or according to some chance, whose decision he had privately resolved to adopt. His public silent act would refute all such after thoughts; and his silence, when he should have spoken, would out-weigh his subsequent assertions. With like reason, the solemn act done by a jury as a body, should not be invalidated by affidavits contrary to it, which some or all of the jurors may make concerning the private reasons which influenced the body, imputing misconduct to themselves, and not to other persons. Whether they have been misled by sophistry or mistake, or have adopted the determination of a majority or chance, they have upon their oaths unanimously rendered a verdict in solemn form, and high considerations of justice and policy place their verdict beyond their future influence. Decency itself forbids that they should assail it by disclosing to their own shame, the secrets of themselves."

This principle has been reaffirmed and recognized in several subsequent cases where the facts were somewhat different and not altogether like the identical facts in the case of *Smith* v. *Culbertson,* the difference of facts being immaterial in some and quite different in others. Some of these cases are: *State* v. *Nance,* 25 S. C. 172; *State* v. *Senn,* 32 S. C. 403, 11 S. E. 292; *Bratton* v. *Lowry,* 39 S. C. 388, 17 S. E. 832; *State* v. *Bennett,* 40 S. C. 310, 18 S. E. 886; *State* v. *Kelly,* 45 S. C. 668, 24 S. E. 45; *State* v. *Robertson,* 54 S. C. 154, 31 S. E. 868.

It appears when the verdict was returned at the request of defendant's counsel the jury was polled and each juror announced that the verdict rendered was their verdict. Later on, when an effort was made to show the Court how the verdict was arrived at, and what took place in the jury

room, Judge Sease at first stopped the reading of the affidavit of the foreman of the jury and "held it was against public policy to go into the jury room and find out what had been done in there." He was correct in this ruling and should have adhered to it, as there was no effort to show that the jury after returning had been subject to any outside influence or that their privacy had been invaded or that they had been furnished liquor or anything of the kind or that they were guilty of misconduct, such as the Court should inquire into. The sole effort was to bring out what took place in the jury room among the jurymen themselves, uninterrupted by outsiders, in the privacy or secrecy of their deliberations. But, his Honor went further and reconvened the jury and examined them, or permitted it, and allowed all of the facts to be brought out and then refused to interfere with the verdict rendered by them. He decided, after the fullest investigation, that there was no misconduct on the part of the jury and that the verdict by them was their verdict. We are inclined to agree with him in this view and think the verdict rendered by the jury was arrived at by them voluntary and free from misconduct on their part to such an extent that it should not be interfered with on that account.

The exceptions raising this question are, therefore, overruled.

4th. As to the alleged error on the part of his Honor to hear counsel in full on their motion for a new trial.

We think the exceptions raising this question should be overruled, as it is a matter in the discretion of the presiding Judge as to how long he will permit argument, and how it is to be argued, on a motion for a new trial. The facts of the trial are usually fresh in his mind, and he has some discretion as to whether he will allow a retrial of the whole case before him and a reargument of the whole case inflicted on him, or only direct attention to certain questions that he wishes discussed.

This wise discretion on the part of the Judge we are confident will not be often abused, and the parties moving for a new trial will usually be accorded a full, patient and ample hearing, and in this case we see no erroneous exercise of authority or power on the part of his Honor, the trial Judge. The exceptions raising this question are overruled.

As to the 2d head of exceptions, which allege error on the part of his Honor in his charge to the jury. His Honor, in his charge to the jury in drawing the line between the measure of proof required by the State in making out its case and the measure of proof required by the defendant in making out his affirmative defense, used the following language: "In the first place, gentlemen, the State is called upon to prove the guilt of the defendant at the bar beyond all reasonable doubt; that is, a doubt for which you can give a reason—not a flimsy or fanciful doubt, but a reasonable doubt. The defense of self-defense is an affirmative defense and must be shown by the defendant by a preponderance of the testimony. The measure of proof on the part of the State is beyond a reasonable doubt; the measure of proof, before the defendant can say that he has made out his case of self-defense successfully, is by the preponderance of the evidence—by the greater weight of the testimony. Therefore, as an illustration, you will take all of the testimony in favor of his plea of self-defense, put it in an imaginary scale, in your mental picture—put all the evidence in one side of that scale or balance in favor of his plea and all the evidence against it in the other side, and if it stands evenly balanced in your mind the plea of self-defense falls to the ground, and has not been made out. But if the side in which you have placed, in your mind, the testimony in favor of the plea of self-defense, outweighs or preponderates in the least the other side, then his plea of self-defense has been made out, and you will write a verdict of not guilty."

In the entire charge this is all that appears on this proposition. Nowhere, do we find that he stated to the jury that the defendant was entitled to the benefit of every reasonable doubt on every material point in the case and cure, as it were, this defect in his charge, as was done by the presiding Judge in the following cases: *State* v. *Way,* 38 S. C. 346, 17 S. E. 39; *State* v. *Andrews,* 73 S. C. 260, 53 S. E. 423; *State* v. *Thrailkill,* 71 S. C. 136, 50 S. E. 551; *State* v. *Way,* 76 S. C. 94, 56 S. E. 653.

The Court has squarely held that the defendant is entitled to the benefit of every reasonable doubt on every material point in the case, and in particular as to the measure of proof on the plea of self-defense.

In the case of the *State* v. *Bodie,* 33 S. C. 132, 11 S. E. 624, Mr. Justice McIver says: "The rule, as we understand it, is that while the State in a criminal case is bound to prove every essential element of the charge made beyond a reasonable doubt, the same strictness of proof is not required of a defendant who sets up a special defense, for he is only required to prove such defense by a preponderance of the evidence. But this, of course, is subject to the general rule that if upon the whole testimony, both on the part of the State and the defendant, the jury entertain a reasonable doubt as to any material point in the case, the defendant is entitled to the benefit of such doubt." Citing *State* v. *Paulk,* 18 S. C. 514; *State* v. *Bundy,* 24 S. C. 439; *State* v. *Welch,* 29 S. C. 4, 6 S. E. 894.

, We think his Honor was in error in charging the jury in the language he did. That it was misleading and prejudicial to the defendant and the exceptions raising this question should be sustained and a new trial granted.

The judgment should be reversed.

MR. JUSTICE FRASER concurs in the result of this opinion for the additional reason that he does not think the trial

Judge has the right to limit the defendant to self-defense under a plea of not guilty.

MR. JUSTICE HYDRICK. I concur in the opinion of Mr. Justice Watts, except in the conclusion that there was reversible error in the charge on the subject of the reasonable doubt.

In the first part of his charge, after defining murder, the Circuit Judge said: "The State is called upon to prove beyond a reasonable doubt the material allegations of an indictment, before a verdict of guilty of murder can be written." Again, when he came to charge on the burden of proof, he said: "The State is called upon to prove the guilt of the defendant at the bar beyond all reasonable doubt." He then charged that the burden was on the defendant to prove his plea of self-defense by the preponderance of the evidence. It is not and cannot be contended that there was any error in what was charged. But it is contended that there was error in a mere omission,—in failing to charge that, if the jury had a reasonable doubt as to whether the defendant had established his plea of self-defense by the preponderance of the evidence, they should acquit him, and that, because the jury were not charged "that the defendant was entitled to the benefit of every reasonable doubt on every material point in the case," the judgment should be reversed.

There is no substantial difference between what was charged and what, it is contended, should have been charged. The Court did charge that the State must prove "beyond a reasonable doubt the material allegations" of the indictment. Can that language be construed otherwise than to mean *every* material allegation of the indictment? Again, when the Court said, "the State is called upon to prove the guilt of the defendant at the bar beyond *all* reasonable doubt," can it be said that "*every* reasonable doubt on *every* material point in the case" was not included? Such a construction

of the charge as is contended for is purely technical—too technical for a sound and practical administration of the criminal law. It is not reasonable to suppose that, if the charge had conformed with technical precision to appellant's conception of what it should have been, it would have affected the result.

But the identical point has been decided against appellant's contention. In Bodie's case, 33 S. C., 132, 11 S. E. 624, error was imputed to the Court in failing to charge the jury that, if they had a reasonable doubt as to which way the preponderance of the evidence on the plea of self-defense was, they must give the defendant the benefit of that doubt. To which this Court responded, in part, as follows: "Sufficient answer to this would be, that we are unable to discover that the Circuit Judge was requested to give such further instruction to the jury." True, the Court did go on to give another reason, by showing that the jury could not have been misled by the omission, because they had been told, elsewhere in the charge, that "the State is bound to prove every point against the defendant beyond a reasonable doubt," and, also, that, if they "had a reasonable doubt upon any question of guilt arising in the case," the defendant was entitled to the benefit of it. The general terms of the charge in the case now under review, as has already been pointed out, clearly indicated to the jury that the defendant was entitled to the benefit of every reasonable doubt upon every material point in the case. The case of *State* v. *Way,* 38 S. C. 346, 17 S. E. 39, is even stronger against appellant's contention. In that case, the defendant both denied the killing and relied on the plea of self-defense. The Court charged the State's 6th request, to wit: "When self-defense is pleaded, it must be proved by a preponderance of the evidence." It also charged defendant's 14th request, to wit: "If, from all the evidence, the jury have a reasonable doubt as to whether or not the defendant fired the pistol shot which caused the death of the deceased, the defendant is

entitled to the benefit of that doubt, and their verdict should be 'not guilty.' " The only general instruction on the reasonable doubt was, "if you are satisfied, beyond a reasonable doubt, that the accused killed Whetstone with malice aforethought, your verdict will be simply guilty." Responding to an assignment of error in charging the State's 6th request, without adding, "that if, upon the whole testimony, the jury entertains a reasonable doubt as to any material point, the defendant must be accorded the benefit of such doubt," this Court said: "The Circuit Judge was exceedingly careful to vouchsafe in his charge the benefit of all doubts in favor of the prisoner. This may be done at the time the request is passed upon or afterwards, provided the jury is not left in any doubt as to the application of the principle."

In a number of other cases, this Court has disposed of similar exceptions by saying that the jury had been instructed with sufficient clearness in other parts of the charge, to give the defendant the benefit of every reasonable doubt on every material point in the case, or language of similar import. *State* v. *Thrailkill,* 71 S. C. 136, 50 S. E. 551; *State* v. *Andrews,* 73 S. C. 260, 53 S. E. 423; *State* v. *Way,* 76 S. C. 94, 56 S. E. 653; *State* v. *Dawson,* 85 S. C. 235, 67 S. E. 313; *State* v. *Babb,* 88 S. C. 395, 70 S. E. 309.

It does not follow, however, that it would have been held to be reversible error, if such general instruction had not been given, in the absence of a request. No decision of this Court so holding has been cited, and none has been found. On the contrary, the Court has held, in cases too numerous to mention, that it is the duty of counsel to call the Court's attention to any mere omission or inadvertence in the charge, and that, in the absence of a request, the failure to charge any special proposition of law or on any particular phase of the case, is not reversible error. It does not appear that the Court was requested to give any further or more definite instruction. In *State* v. *Adams,* 68 S. C. 421, 47 S. E. 676, the Court failed to instruct the jury that, if they should con-

vict the defendant of murder, they could recommend him to
mercy, and that, under the provisions of a statute, such
recommendation would change the sentence from death to
life imprisonment. How vastly more important was the
omission in that case. Yet, though the defendant was con-
victed of murder, without recommendation, and sentenced to
death, this Court held the error was not reversible. Mr.
Justice Woods, speaking for the Court, said: "Failure to
charge the jury that they could convict of murder and
recommend to mercy, and that such recommendation would
result in a sentence of life imprisonment instead of a sen-
tence of death, has been held by this Court not to be reversi-
ble error, when there was no request for such a charge.
*State* v. *Owens,* 44 S. C. 324, 22 S. E. 244. The rule is
thus stated in *State* v. *Myers,* 40 S. C. 556, 18 S. E. 892:
'As will be observed, in the first ground of appeal the appel-
lant alleges that the Circuit Judge erred in failing to make
a charge that appellant now thinks would have inured to his
benefit. By numerous decisions of this Court it has been
held to be the law in this State, that no such allegation of
error will be considered in this Court, unless a request for
such charge has been made to the Circuit Judge on the trial
before him.' See 11 Ency. P. & P. 217, and the numerous
authorities there cited. The author says: 'The failure of a
Judge to charge upon any material point usually results
from inadvertence, and the law casts upon the parties the
duty of calling the Judge's attention to the matter. If he
then refuses to give a proper requested instruction, such
refusal is ground of error; but a party cannot, in a Court of
error, avail himself of an omission which he made no effort
to have supplied at the time. The Court cannot be pre-
sumed to do more in ordinary cases than express its opinion
upon the questions which the parties themselves have raised
on the trial. It is not bound to submit to the jury any
particular proposition of law unless its attention is called to
it. If counsel desire to bring any view of the law of the

case before the jury, they must make such view the subject of a request to charge, and, failing in this, they cannot assign error.' Any other doctrine would, we think, produce overwhelming embarrassment and delay in the practical administration of justice. Under the Constitution of 1895, the rule has been applied in *State* v. *Smith,* 57 S. C. 489, 35 S. E. 727; *State* v. *Chiles,* 58 S. C. 47; *Youngblood* v. *R. R. Co.,* 60 S. C. 9, 38 S. E. 232; *Sudduth* v. *Sumeral,* 61 S. C. 276, 39 S. E. 434, and other cases. The doctrine is based on acquiescence and waiver. It is true, the Constitution of 1895 requires the Judge in charging juries 'to declare the law.' But the right to have all the law declared may be waived like any other right, and an omission acquiesced in. The failure to request instructions on any particular point is regarded waiver of the right to such instruction and acquiescence in the omission. If the appellant, who was represented by most able and vigilant counsel, thought himself prejudiced by the inadvertent omission of the Circuit Judge to speak of the right of the jury to recommend to mercy, and the effect of such recommendation, he should have requested the statement made."

In *Dover* v. *Lockhart Mills,* 86 S. C. 231, 68 S. E. 525, the error assigned consisted in using the word "and" where "or" should have been used in the charge. The Court quoted with approval from the opinion in *Davis* v. *R. R.,* 75 S. C. 307, 55 S. E. 526, as follows: "It would greatly embarrass the practical administration of the law for the appellate Court, in reviewing charges to the jury, to become hypercritical or a stickler for the technical rules of philology in every phrase and clause, and reverse verdicts for some loose expression or some slight misuse of a word, when the general import of the charge stated the law. Any portion of a charge to which exception is taken should be fairly construed with reference to the clear tenor and import of the whole, and as an effort to explain the law of a case to men of ordinary or average education and intelligence. The aver-

age juryman has little knowledge and less concern about fine distinctions, but generally has a desire and capacity for sufficient information to enable him to do substantial justice between the parties," and added: "Mere inadvertence of such a nature in charging the jury must be brought to the attention of the Judge, or they will not avail as grounds of appeal, for if they are not of sufficient importance to attract the attention of counsel learned in the law, we may safely assume they do not mislead the jury or affect the result." To this may be added: If counsel observe such an omission or inadvertence, and fail to bring it to the attention of the Court, to allow them to take advantage of it on appeal would be to let them speculate on chances—the chance of winning on Circuit, notwithstanding the omission or inadvertence, and, in case of losing on Circuit, of obtaining a new trial in this Court. Such trifling with the administration of justice cannot be tolerated.

Following are some of the more recent cases in which this principle has been applied: *Jennings* v. *Mfg. Co.,* 72 S. C. 411, 52 S. E. 113; *Williams* v. *Ry.,* 76 S. C. 1, 56 S. E. 652; *State* v. *Thompson,* 76 S. C. 116, 56 S. E. 789; *Snipes* v. *Ry.,* 76 S. C. 208, 56 S. E. 959; *Morrison* v. *Ass'n,* 78 S. C. 398, 59 S. E. 27; *State* v. *Boyleston,* 84 S. C. 574, 66 S. E. 1047; *State* v. *Chastain,* 85 S. C. 64, 67 S. E. 6; *State* v. *Hendrix,* 86 S. C. 64, 68 S. E. 1291; *State* v. *Crosby,* 88 S. C. 98, 70 S. E. 440. It will be seen from these cases that this Court cannot reverse the judgment in this case on the ground in question without overruling many of its previous decisions, and overthrowing a wise and just policy to which it has adhered for many years in the administration of the law.

The judgment is affirmed.

MESSRS. CHIEF JUSTICE GARY and JUSTICE WOODS *concur.*

February 8, 1913. The remittitur was held up herein to permit appellant to sue out a writ of error to the United States Supreme Court, and upon the Court being informed the design had been abandoned, the remittitur was ordered sent down by *per curiam* order filed February 8, 1913.